720 So.2d 780 (1998)
Beverly D. Nugent SHEWBRIDGE, Plaintiff-Appellee,
v.
Anthol William SHEWBRIDGE, Jr., Defendant-Appellant.
No. 31,170-CA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1998.
*781 Curet & Barron by Sharon B. Barron, Hammond, for Defendant-Appellant.
Charles B. Bice, Winnfield, for Plaintiff-Appellee.
Before MARVIN, WILLIAMS and GASKINS, JJ.
GASKINS, Judge.
Anthol William Shewbridge, Jr., appeals from a trial court judgment awarding his former wife, Beverly D. Nugent Shewbridge, the sum of $15,314.30 for contributions she made to his education and training during their marriage. We amend the judgment and, as amended, affirm.

FACTS
The parties were married in December 1987. Prior to their marriage, Mr. Shewbridge was a student at Northwestern State University (NSU) studying in the area of aviation science. He was not employed. His father, Dr. Anthol Shewbridge, supported him providing money for education and living expenses. Once married, Mr. Shewbridge continued his studies at NSU, and Mrs. Shewbridge worked. Dr. Shewbridge continued to provide monthly financial support to his son. The financial support provided by Dr. Shewbridge ended in August 1992 after Mr. Shewbridge received his commercial pilot's license and moved with his wife to Harper's Ferry, West Virginia. The couple separated in 1993.
During their divorce proceedings, Mrs. Shewbridge asserted a claim under La. C.C. art. 121 for her contributions to her husband's education and training. At the hearing on this claim, Mrs. Shewbridge testified about her employment during the time her husband studied at NSU; she stated that at one point she worked two jobs. She testified that her work and Mr. Shewbridge's studies took away from their time together and their social life. Mrs. Shewbridge, who was working toward a nursing degree at the time of their marriage, explained that she and her husband reached an agreement whereby she would work while he attended school, and then when they moved to West Virginia he would support her while she enrolled in school to complete her nursing degree. She testified that she expected to benefit from this arrangement in the future when they would have a higher standard of living.
With regard to their financial situation during the marriage, Mrs. Shewbridge testified that they had difficulty making ends meet and that they lived "from paycheck to paycheck." She stated that she was only aware of $500 per month sent by Dr. Shewbridge to supplement their income and denied knowing about other amounts sent by Dr. Shewbridge. Her testimony indicated that payments for rent, groceries, tuition, and books came out of their joint account, that the money sent by Dr. Shewbridge was used on education expenses but that the amount was not sufficient, and that her income was used for all of her husband's living expenses. She also testified that the total cost of Mr. Shewbridge's education was $26,000 and that another $5,000 to $6,000 was spent to purchase tools needed for his training. She stated that the only income reported on their tax returns from 1988 to 1992 was her income. She further testified that Mr. Shewbridge did not work while attending NSU.
Mr. Shewbridge denied that any agreement existed whereby his wife agreed to put him through school. He further denied that she ever paid for his tuition or books, and he testified that she did not pay for all living expenses, such as rent and groceries. He stated that his father sent money for his education and living expenses both prior to and during the marriage. He also maintained that their financial circumstances were sufficiently comfortable to allow the couple to take weekend trips and purchase both a new car and antiques.[1]
*782 Mr. Shewbridge introduced several exhibits into evidence, including a financial compilation of the monies provided by his father and earned by Mrs. Shewbridge. He verified that all income reported on their tax returns for the years 1988 through 1992 was earned by his wife. However, he also testified that he worked thirty to forty hours per week for approximately thirty-two to thirty six months earning five dollars per hour, paid in cash, as part of his educational program. However, none of this income was reported for tax purposes. With regard to the money provided by Dr. Shewbridge, he testified that his father never asked to be paid back and that his father supported his sister through school in the same way. Mr. Shewbridge further testified that his wife was aware of the money sent by his father on a monthly basis.
Dr. Shewbridge testified that he paid his son money for his education and living expenses while he was in school and that he did the same for his daughter. The payments began in 1985 and ended in August 1992. A copy of a log kept by Dr. Shewbridge of the money he paid to his son was introduced into evidence, along with copies of canceled checks. Dr. Shewbridge testified that he supported his son, as needed, both before and during the marriage. He stated that he gave the money to Mr. Shewbridge to do as he pleased with it and that he had never considered or asked to have the money paid back.
The trial court accepted the facts as recited in Mrs. Shewbridge's post-trial memorandum and ruled in her favor in accordance with the proposal in that memorandum. The proposed amount was determined using the formula set forth in McConathy v. McConathy, 25,542 (La.App.2d Cir.2/23/94), 632 So.2d 1200, writ denied, 94-0750 (La.5/6/94), 637 So.2d 1052. The amount of contributions attributed to Mrs. Shewbridge was $59,934; the amount of contributions attributed to her husband was $58,305; and the cost of education was set at $29,000[2]. The amount granted by the trial court was $15,314.30.[3] The trial court also awarded Mrs. Shewbridge legal interest from the date of judicial demand. From this judgment, Mr. Shewbridge appeals.

CONTRIBUTIONS TO SPOUSE'S EDUCATION OR TRAINING
Mr. Shewbridge generally complains of a lack of evidentiary support for the award. He asserts that there was no evidenceother than Mrs. Shewbridge's own self-serving testimonyof the amount of educational and living expenses she paid, of the sacrifices she made or the detriment she suffered in contributing to his education, and of her failure to realize any benefits from his education.
La. C.C. art. 121 provides:
In a proceeding for divorce or thereafter, the court may award a party a sum for his financial contributions made during the marriage to education or training of his spouse that increased the spouse's earning power, to the extent that the claimant did not benefit during the marriage from the increased earning power.
The sum awarded may be in addition to a sum for support and to property received in the partition of community property.
Comment (d) of Article 121 explains that "financial contributions" includes both direct educational or training expenses paid by the claimant, as well as living expenses. This award is discretionary. Factors that should be considered include: (1) the claimant's expectation of shared benefit when the contributions were made; (2) the degree of detriment suffered by the claimant in making the contributions; and (3) the magnitude of the *783 benefit received by the other spouse. Barrow v. Barrow, 27,714 (La.App.2d Cir.2/28/96), 669 So.2d 622, writs denied, 96-1057 and 96-1072 (La.6/21/96), 675 So.2d 1080.
In McConathy v. McConathy, supra, we adopted a formula from DeLa Rosa v. DeLa Rosa, 309 N.W.2d 755 (Minn.1981), for calculating an award under La. C.C. art. 121. Under this formula, an equitable award is determined as follows:
working spouse's financial contributions to joint living expenses and educational costs of student spouse
less
½ (working spouse's financial contributions plus student spouse's financial contributions less cost of education)

equals
equitable award to working spouse.
McConathy v. McConathy, 632 So.2d at 1205.
It is well settled that an appellate court may not set aside a trial court's factual findings in the absence of manifest error or unless the findings are clearly wrong. Stobart v. State, through Department of Transportation and Development, 617 So.2d 880 (La.1993). Even where an appellate court may feel that its own evaluations are more reasonable than those of the fact finder's, any reasonable determinations of fact should not be disturbed. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). This deference to the trial court's factual findings is based upon its opportunity to evaluate live witnesses and the distinction between the functions of the trial and appellate courts. Stobart, supra. Where there are two permissible views of the evidence, the fact finder's choice cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Our review of the record reveals adequate support for the trial court's judgment. The testimony and evidence demonstrated that Mrs. Shewbridge worked during the marriage while her husband attended school. The income earned by Mrs. Shewbridge and at least some of the funds sent to Mr. Shewbridge by his father were placed into a joint account from which living expenses and some educational expenses were paid. It is clear that Mrs. Shewbridge provided support for Mr. Shewbridge while he attended school. While Mr. Shewbridge argues that the evidence does not show what expenses were paid by Mrs. Shewbridge, the evidence also does not show, contrary to his assertion, what particular expenses were paid by funds provided by Dr. Shewbridge. Furthermore, there is no indication in the record that the cash money allegedly made by Mr. Shewbridge was ever used for either educational or living expenses.
Mr. Shewbridge also asserts that there is no showing of any detriment or sacrifice suffered by Mrs. Shewbridge while contributing to his education. He points out that they purchased a car and antiques while married and took weekend trips. However, as previously noted, Mrs. Shewbridge explained in her testimony that most of the antiques were purchased after they moved to West Virginia and while they lived with Mr. Shewbridge's parents; also, most were purchased on layaway plans. She further clarified that the vehicle cost $8,000 and that she paid cash for it after working two jobs and receiving a tax refund. The record indicates that the couple's income during the period Mr. Shewbridge attended school was not substantial and that their income was provided by Mrs. Shewbridge. The fact that Mrs. Shewbridge worked and contributed to expenses while her husband attended school is sufficient to satisfy the requirement of La. C.C. art. 121 in this case.
Mr. Shewbridge also asserts that there is no showing of any benefit lost by Mrs. Shewbridge because his income in 1993, as reported in the financial compilation submitted into evidence, was only $14,338.65. This argument overlooks the purpose of La. C.C. art. 121 which is to compensate the working spouse for contributions which helped to increase the earning power of the other spouse when the working spouse will not benefit from the increased earning power during the marriage. The focus of this article is on increased earning power and not increased earnings. Mr. Shewbridge's earnings will likely rise and Mrs. Shewbridge will not benefit *784 from the increase. Thus, she is entitled to compensation for the contributions she made which enabled him to increase his earning power during their marriage. We therefore find that Mrs. Shewbridge is entitled to a monetary award as provided in La. C.C. art. 121.
Our review of the record indicates that the calculation of the award, which was provided by Mrs. Shewbridge and adopted by the trial court, requires minor adjustment. Mr. Shewbridge does not challenge the figure used for Mrs. Shewbridge's financial contributions. This amount$59,934is the total attributed to her in the financial compilation prepared by Mr. Shewbridge; by our calculations, it is derived by adding the income reported on the couple's tax returns. The amount of contributions attributed to Mr. Shewbridge was $58,305. This amount represents the money provided by Dr. Shewbridge; however, it is not apparent how this figure was computed. Mr. Shewbridge's financial compilation indicates in two different places that the amount of funds provided by Dr. Shewbridge during the marriage from 1988 through 1992 was $57,030. However, our calculations indicate that the sum was actually $57,330.[4] We elect to use this amount$57,330in calculating the award rather than the amount apparently relied upon by the trial court.
The amount attributed to the cost of education was $29,000. This sum was apparently derived from Mrs. Shewbridge's testimony that she and her husband calculated the cost of his education at $26,000 and that he spent several thousand dollars on tools which were still in his possession. While Mr. Shewbridge argues that there is no evidence or documentation supporting Mrs. Shewbridge's testimony, he does not assert that the amount is incorrect nor did he offer an alternate amount at trial. We find $26,000 reasonable in light of the testimony and evidence in the record. With regard to the money paid for tools, we find that this amount should not be included in the educational expenses; the tools are an asset more appropriately addressed in the partition of community property. Consequently, only the $26,000 will be considered as the cost of education in calculating the award.
Calculating the award using $59,934 as Mrs. Shewbridge's contribution, $57,330 as Mr. Shewbridge's contribution, and $26,000 as the cost of education, we find that amount due to Mrs. Shewbridge for her contributions to her husband's education and training is $14,302.

AWARD OF INTEREST
Mr. Shewbridge also contends that the trial court erred in awarding interest from the date of judicial demand rather than from the date of judgment. We agree. In McConathy v. McConathy, supra, we characterized a claim for contributions to a spouse's education and training as an unliquidated debt which is due from the moment it is ascertainable by judgment. We determined that an award of legal interest was appropriate on such a claim and found that interest should be awarded from the date of judgment. We therefore amend the trial court's judgment to provide interest on the award from the date of judgment.

CONCLUSION
We amend the judgment of the trial court to award Mrs. Shewbridge $14,302 on her claim for contributions to Mr. Shewbridge's education and training. Interest on this award shall run from the date of the judgment. As amended, the judgment is affirmed. Costs are assessed against Mr. Shewbridge.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] On rebuttal, Mrs. Shewbridge testified that the antiques were either bought on layaway plans or purchased after they moved to West Virginia. As to the acquisition of the vehicle, she stated that she worked two jobs to earn the down payment and that the balance was paid from money obtained from an income tax refund.
[2] In her post-trial memorandum, Mrs. Shewbridge set the amount of her husband's educational costs by adding $26,000, the estimated amount of his tuition and flying expenses, and $3,000, the cost of power tools he purchased for use during his training. However, we note that she testified at trial that the cost of the tools was between $5,000 and $6,000.
[3] The proposed award was calculated as follows in Mrs. Shewbridge's memorandum:

$59,934 ½($59,934 + $58,305$29,000) = $15,314.50
The trial court's award of $15,314.30 was apparently an inadvertent difference of twenty cents.
[4] We attribute this error to a miscalculation on page 10 of the financial compilation admitted as exhibit # D-2, where the amount given for the father's gifts in 1988 was $15,368. The figure given for this same item on page 7 of the exhibitand confirmed by our calculationswas $15,668. We further note that the correct figure of $57,330 for Mr. Shewbridge's contributions is foundrandomly placedon page 7.