813 So.2d 1232 (2002)
Gladys Allen McDANIEL, Plaintiff-Appellant,
v.
Floyd McDANIEL, Defendant-Appellee.
No. 35,833-CA.
Court of Appeal of Louisiana, Second Circuit.
April 3, 2002.
*1233 W. Charles Brown, Mansfield, for Appellant.
Floyd McDaniel, In Proper Person.
Before WILLIAMS, GASKINS and DREW, JJ.
WILLIAMS, J.
In this suit for partition of community property, the plaintiff, Gladys Allen McDaniel, appeals a district court's method of allocation of community property between her and the defendant, Floyd McDaniel. In allocating the community assets, the trial court used a unique method involving "bidding" by the parties on community assets. Mrs. McDaniel asserts that the trial court had no legal authority to sell the community assets to the highest bidding former spouse, and that the trial court failed to give due consideration to Mrs. McDaniel's poor financial condition in "auctioning off" the community assets. For the reasons set forth below, we vacate the trial court's partition judgment and remand for further proceedings.

FACTS
Gladys Allen McDaniel and Floyd McDaniel were married on October 6, 1996. They established their marital domicile in Logansport, Louisiana, which is located in DeSoto Parish. They were divorced on June 1, 2000. The community of acquets and gains that previously existed between the parties was dissolved retroactively to September 21, 1999, the date that the petition for divorce was filed.
After subsequent attempts to voluntarily partition the community were unsuccessful, Mrs. McDaniel filed a petition for judicial partition on October 3, 2000. In March 2001, the matter came before the trial court. Mrs. McDaniel was represented by counsel, but Mr. McDaniel appeared in proper person. Because the parties could not agree upon the allocation of several items of community property, the trial court elected to have the parties "bid" on the items that they desired from the property. Apparently, after the items were "auctioned" to the parties, the trial court planned to total the amount "spent" by each party and then have the party who had spent the larger amount make an equalizing payment to the other party of one-half the difference between those amounts. However, the rules of the "auction" were not clearly explained to the parties beforehand, and the record indicates that neither Mrs. McDaniel nor Mr. McDaniel fully understood what was occurring.
By far, the most valuable community property was the immovable property consisting *1234 of a house and two lots. Mrs. McDaniel had valued the immovable property at $22,000 on her detailed descriptive list. The house itself was valued at $15,000, while the lots were valued together at $7,000. Mr. McDaniel did not challenge his former spouse's valuation of the immovable property, and there is no indication that the trial court either did or should have challenged that valuation. The immovable property was subject to a total charge of $6,834, making the net value of the immovable property $15,166.
The movable property was much less valuable, and not all movable items of community property were "auctioned." Without objection, Mrs. McDaniel received a truck valued at $1,500, while Mr. McDaniel received an automobile. The automobile had no positive valuation because it was subject to a mortgage that apparently equaled its actual value. The parties also owned two small boats, and they agreed for each to receive one of the boats in the property settlement. Likewise, each party received one of the two air conditioning units belonging to the community. Mrs. McDaniel received a freezer and some end tables that the parties agreed were her separate property, while Mr. McDaniel received an entertainment center that Mrs. McDaniel had valued at $75. Mr. McDaniel did not object to this valuation. He also received a stereo system that Mrs. McDaniel did not wish to bid on, and that Mr. McDaniel alleged Mrs. McDaniel had intentionally damaged.
The remaining six items of movable community property were "auctioned." Mrs. McDaniel was the successful bidder on four of these items, while Mr. McDaniel was the successful bidder on two items. Mrs. McDaniel's bids totaled $500 on her four items; Mr. McDaniel's bids totaled $220 on his two items. Thus, if the value of community movable property were measured by the amounts bid and by the valuations accepted by the parties, Mrs. McDaniel received $2,000 worth of movable property, and Mr. McDaniel received $295 worth of movable property.
The trial court then "auctioned" the immovable property. Initially, it appeared that the court was auctioning only the house and the one lot upon which it stood. The court indicated that there was "at least $11,000.00 in equity or value there that you're bidding on." Then the court indicated that they could "just round it off" and say they were bidding on a $10,000.00 piece of property. However, during the bidding process, the property being "auctioned" included both lots. Mr. McDaniel had the successful bid of $10,000.
After the bidding was completed, the trial court subsequently informed the parties that Mrs. McDaniel was receiving the movable items she had "purchased" for a total cost of $2,100, while Mr. McDaniel was receiving the movable items he had purchased, plus the house and two lots, minus "the attendant debt," for $4,948. The court calculated the difference as $2,848, and indicated that Mr. McDaniel would owe that amount to Mrs. McDaniel as an equalizing payment. Mrs. McDaniel was not to deed the immovable property to Mr. McDaniel until that amount had been paid. The court also gave Mr. McDaniel credit for a medical bill in the amount of $13.54. Mrs. McDaniel appeals the trial court's judgment.

DISCUSSION
Mrs. McDaniel contends the trial court failed to give due consideration to her poor financial condition in auctioning off the community assets, and that the trial court had no legal authority to sell the community assets to the highest bidding former spouse under the provisions of LSA-R.S. 9:2801. Mrs. McDaniel, who had been *1235 proceeding in forma pauperis in the trial court, argued that the bidding process utilized put her in jeopardy of having to pay Mr. McDaniel a sum of money which she had no means to pay, and that the bidding procedure resulted in her failure to receive any portion of the real estate that was the most valuable community asset. She also argued that the provisions of LSA-R.S. 9:2801 require a trial judge to allocate the community assets to the parties, but do not authorize the sale of these assets to the highest bidder.
In community property partitions, the trial court is granted much discretion by LSA-R.S. 9:2801 in valuating assets and allocating liabilities and is required to consider the source and nature of each asset or liability, the financial situation of each spouse and any other relevant circumstances. Ball v. Ball, 32,851 (La.App.2d Cir.3/1/00), 757 So.2d 824; Bedenbender v. Bedenbender, 28,579 (La.App.2d Cir.8/21/96), 679 So.2d 506.
Initially, we observe that while there was apparent confusion by both parties at the partition hearing, Mrs. McDaniel's counsel never objected either to the legality of the bidding process or to the fairness of that process in light of Mrs. McDaniel's financial condition. Furthermore, we note that despite her argument that she was in no financial position to bid on anything, she bid $9,995 on the immovable property, and was the successful bidder on most of the items of movable property. In short, Mrs. McDaniel's words and actions did not indicate that she was restrained from freely bidding because of her financial condition.
With respect to Mrs. McDaniel's argument that the partition statute requires allocation of community assets, but does not authorize sale of the assets, we observe that the "auction" process utilized by the trial court was not a true sale, but a method, albeit unique, of attempting to allocate community assets between the parties. The method apparently was designed to deflate any overvalued items on detailed descriptive lists, and to insure that to some extent each party received those items of community property that were important to that party.
If we were to view Mrs. McDaniel's assignment of error narrowly as one simply objecting to a partition method involving "bidding," we arguably could affirm the trial court's judgment. Trial courts are not bound by rigid rules when partitioning property, and the provisions of LSA-R.S. 9:2801 do not specifically forbid the trial court from employing any type of bidding process or ranking process by the former spouses. In valuing and allocating assets and liabilities to partition community property, a trial court is not required to accept at face value a spouse's valuation of assets, debts, or claims against the community. Moreover, absent manifest error, a trial court's factual findings and credibility determinations made in the course of valuing and allocating assets and liabilities in order to partition community property may not be set aside on appeal. Chance v. Chance, 29,591 (La.App.2d Cir.5/7/97), 694 So.2d 613. However, we also are mindful that an appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. LSA-C.C.P. art. 2164. Employing this rule and reading Mrs. McDaniel's second assignment of error a bit more broadly, we understand her complaint as being directed to the essential fairness of the actual partition method employed under the circumstances of this case, and we conclude that the method used and the accompanying errors made in the partition require us to vacate the partition judgment.
As previously noted, the record reveals that neither party fully understood the *1236 rules of the bidding process. Because the "auction" procedure not only was used for allocation, but also was used for valuation purposes, there was no fixed total sum of money with which each party could bid, and it would appear extremely unlikely that either party appreciated the skills inherent in any such bidding scheme. A party who understood the process would also understand the need to "bid up" the price of items, even if the party had no real desire to own an item. Otherwise, their former spouse could obtain the item for a bargain price, and that bargain ultimately would have a negative impact on the value of the other spouse's share. Moreover, we note that the trial court made several errors in the partition calculations. After noting that the parties were bidding on the remaining equity in the immovable property, as a result of the fact that the immovable was burdened by a charge of $6,834, the court nevertheless proceeded to again deduct that amount from Mr. McDaniel's winning bid when calculating Mr. McDaniel's equalizing payment. Although this was the most serious calculation error, we also note that the trial court incorrectly totaled the amount of movable property purchased by Mrs. McDaniel, and failed to divide in half the amount which Mr. McDaniel was ordered to pay as an equalizing payment.
As the ultimate result of the confusion and miscalculations, if we consider the undisputed net value of the community immovable property as just over $15,000, and if we accept the value of the movable property as fixed by the "auction," Mr. McDaniel received over $15,000 worth of community assets, while Mrs. McDaniel received only about $2,000 in community assets. However, Mr. McDaniel was ordered to pay an equalizing sum of only $2,834. Such a result is clearly wrong.
If we could fairly partition the community property based upon the record before us, we would do so, rather than remand for further proceedings. However, there is simply too much uncertainty concerning a just allocation of the value of the community immovable property. Considering the value of that property as compared to the much smaller value of the community movable property, and considering the financial circumstances of both parties, it is not at all clear that either party, if awarded the immovable property, would be in a position to make a proper equalizing payment to the other spouse. Furthermore, we do not know whether any or all of the immovable property may have been sold following the partition judgment and may now belong to a third-party purchaser. Accordingly, we must vacate and remand.

CONCLUSION
For the reasons set forth above, the trial court's partition judgment is hereby vacated, and the case is remanded for further proceedings pursuant to the provisions of LSA-R.S. 9:2801. Costs are assessed to the appellee, Floyd McDaniel.
VACATED AND REMANDED.
DREW, J., concurs with written reasons.
DREW, J., concurring.
Mrs. McDaniel and her attorney were both present when the trial judge partitioned the community by holding the "auction." No objection or protest was made by either of them. Under normal circumstances, I would not favor affording relief to any appellant who had counsel at trial, with no objection being made to what they now have appealed.
However, I respectfully concur with the result reached by the majority. There were apparent errors in calculation, plus *1237 the possibility of (a) third party purchaser(s). The trial judge is in the better position to remedy what has transpired and assure that basic fairness prevails.