960 So.2d 1068 (2007)
Patricia McLaurin CLEMONS, Plaintiff/Appellant,
v.
Tony Randall CLEMONS, Defendant/Appellant.
Tony Randall Clemons, Plaintiff/Appellant
v.
Patricia McLaurin Clemons, Defendant/Appellant.
Nos. 42,129-CA, 42,130-CA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 2007.
Opinion on Rehearing July 11, 2007.
*1070 Snell and Robinson by A. Richard Snell, Bossier City, for Patricia McLaurin Clemons.
Francis M. Gowen, Jr., Shreveport, for Tony Randall Clemons.
Before GASKINS, PEATROSS & LOLLEY, JJ.
PEATROSS, J.
These appeals arise from the partition of community property between Patricia Clemons and Tony Clemons. Both parties appeal several aspects of the trial court's judgment. For the following reasons, we amend and, as amended, we affirm.

FACTS
The parties physically separated in April 2002. A Judgment of Divorce was rendered on November 5, 2002, and was signed and filed December 2, 2002. A trial to partition the community property was held in November 2005. The Judgment of Partition divided the assets and liabilities between the parties and awarded Ms. Clemons an equalization payment of $165,216.61 less one-half of the value of their mobile home.
Prior to the Judgment of Partition, the trial court rendered an opinion disposing of the remaining contested issues in the case. In that opinion, the trial court denied a claim for reimbursement filed by Dr. Clemons for amounts he paid out of his *1071 separate property on the mortgage note and fire insurance premiums for the immovable property owned by the community. The property housed his veterinarian practice, Rocking Rooster Veterinarian Services ("Rocking Rooster"), and was in his exclusive possession after the parties separated. Ms. Clemons was prohibited by court order from entering the premises based on Dr. Clemons' allegations of disruptive behavior when she would do so. The trial court denied his claim for reimbursement and determined the equity in the building by offsetting the total original debt against the agreed value of the building.
Among the contested items also to be resolved by the trial court was the value of the cattle and horses owned by the community along with Dr. Clemons' claim for reimbursement for their care. The trial court valued the livestock at $35,000, with a deduction of $10,000 for feed and miscellaneous expenses.
Also in dispute was an account resulting from a settlement with Dr. Ashley Buffington stemming from her employment with the veterinarian clinic ("the Buffington account"). The suit and resulting settlement were for Dr. Buffington's violation of a non-compete clause in her contract with Dr. Clemons. The account had a total of $19,000. Without providing reasons, the trial court found $10,000 of the account was community and the remaining $9,000 was the separate property of Dr. Clemons. The trial court also allowed a $4,000 deduction from the value of the veterinarian clinic for bad debts. In addition, under La. C.C. art. 121, the trial court awarded Ms. Clemons $17,500 for her financial support of Dr. Clemons while he was in veterinarian school.
The trial court initially denied the claim of Dr. Clemons for reimbursement of $16,932.72 for payments made by him on the 2001 Ford F-350 truck. Dr. Clemons was awarded exclusive use of the vehicle for personal and business purposes. In ruling on Dr. Clemons' Motion for New Trial, however, the trial court reversed its original judgment and allowed Dr. Clemons a zero value for the truck resulting in a reduction of $15,105 in Dr. Clemons' assets. This reduced the equalization payment owed to Ms. Clemons by $7,552.50.
Both parties filed Motions for a New Trial. The trial court denied Ms. Clemons' motion. The trial court granted Dr. Clemons' motion in part, reversing its decision on the truck, and denied the motion in part pertaining to his claim for reimbursement related to the immovable property.
Both parties appeal several issues to this court. Dr. Clemons appeals the denial of his claim for reimbursement for payments made on the immovable property and the La. C.C. art. 121 award to Ms. Clemons for financially supporting him through veterinarian school. Ms. Clemons appeals the amount of this award along with the value of the livestock and the reimbursement granted for them, the characterization of the Buffington account, the deduction for bad debts and the reimbursement for payments on the truck.

DISCUSSION
A trial court's factual findings and credibility determinations made in the course of valuing and allocating assets and liabilities in the partition of community property may not be set aside absent manifest error. McDaniel v. McDaniel, 35,833 (La.App.2d Cir.4/3/02), 813 So.2d 1232. An appellate court may not set aside a trial court's finding of fact unless it is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the *1072 appellate court may feel that its own evaluations and inferences are as reasonable. Id.; Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

Reimbursement of Mortgage Payments
Dr. Clemons appeals the trial court's denial of his claim for reimbursement for the use of his separate property to pay the monthly mortgage payments on the property housing the Rocking Rooster veterinarian clinic, along with the insurance premiums. The record supports that Dr. Clemons used $211,297.26 of his separate property, specifically, his income earned after separation, to pay the mortgage and insurance. In addition, Dr. Clemons testified that the bank required him to carry insurance on the building without which the bank would foreclose on the property. After referencing Ms. Clemons' exclusion from the building and Dr. Clemons receiving all the income from the business, the trial court denied his reimbursement claim, reasoning that, "under these facts it would not be just or equitable." The trial court, instead, found the more equitable approach to be taking the total original debt ($470,544.90) out of the agreed value of the property ($550,000) to determine the equity in the building. The issue before this court is whether Dr. Clemons is entitled to reimbursement from the community for the amount he paid on the building's mortgage and insurance. We hold that Dr. Clemons was entitled to his reimbursement and, in addition, that the equity in the building should be recalculated, as discussed below.
The debt at issue originated as a line of credit with Gibsland Bank obtained by both parties prior to the termination of the community. The credit was used to purchase the real estate and construct a building for the Rocking Rooster veterinarian clinic. After the termination of the community, Gibsland Bank required that the line of credit be converted into a permanent loan and both Dr. and Ms. Clemons signed the promissory note and mortgage. The bank, however, provided Ms. Clemons with a commitment letter which would relieve her of any indebtedness when, in the future, Dr. Clemons was awarded sole ownership. In December 2004, Dr. Clemons refinanced the permanent loan with Regions Bank at a lower interest rate. That loan only paid off the loan with Gibsland Bank and Dr. Clemons received no additional funds beyond that of the outstanding amount of the Gibsland Bank loan. Ms. Clemons did not sign the promissory note, but signed the mortgage securing the loan as co-owner of the property. Ms. Clemons argues that the permanent loan with Gibsland Bank and the most recent loan with Regions Bank extinguishes the only community obligation, the line of credit.
A community obligation is "[a]n obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse." La. C.C. art. 2360. Ms. Clemons argues that, because the two recent loans were made after the termination of the community, they cannot be considered community obligations for which reimbursement could arguably be due. We disagree. Both the permanent loan with Gibsland Bank and the refinance with Regions Bank encompassed the same community debt, i.e., the original line of credit. We find no guidance in the case law concerning a post-termination refinancing of a community obligation, but we are not persuaded that Dr. Clemons' prudent management of the community obligation somehow transformed the true nature of the debt.
We are further persuaded that a spouse should not be discouraged from taking prudent actions concerning community obligations. A former spouse has a *1073 duty to preserve and prudently manage former community property under his control. La. C.C. art. 2369.3. This duty is higher than that imposed on a managing spouse during the existence of the community. Ellington v. Ellington, 36,943 (La. App.2d Cir.3/18/03), 842 So.2d 1160, writ denied, 03-1092 (La.6/27/03), 847 So.2d 1269; La. C.C. art. 2369.3, comment (a). This article is usually addressed when one former spouse asserts a claim for compensation due to the breach of this article concerning management of a community business. E.g., Saacks v. Saacks, 05-365 (La.App. 5th Cir.9/26/06), 942 So.2d 1130; Hatsfelt v. Hatsfelt, 05-0947 (La.App. 3d Cir.2/1/06), 922 So.2d 732; Ellington, supra. We find, however, that the policy that a former spouse must act prudently with regard to former community interests is applicable to community obligations as well as community assets. Through its line of credit with Gibsland Bank, the community incurred a duty to repay the money it used for the construction of the clinic. Dr. Clemons' necessary conversion of that line of credit into the permanent loan and then his prudent refinancing of that loan did not change the nature or origin of the duty to repay. The debt, even as a loan with Regions Bank, remained a community obligation.
A spouse who uses his separate property for the payment of a community debt is entitled to reimbursement. Louisiana C.C. art. 2365 provides, in pertinent part:
If separate property of a spouse has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. The liability of a spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations.
We find nothing in the civil code's plain language or as persuasive in the case law that would allow us to ignore the code's clear instruction that, when one spouse uses his separate property to satisfy a community obligation, he is entitled to reimbursement for one-half the amount that he paid. The comments for Article 2365 emphasize that, "[w]hen the separate property of a spouse is used to satisfy any community obligation," the spouse is entitled to reimbursement. La. C.C. art. 2365, revision comment (a)(emphasis in original). As discussed above, the obligation at issue was community in nature and the record supports that Dr. Clemons used his separate property for the payment of that debt. The trial court, therefore, was manifestly erroneous and clearly wrong in denying Dr. Clemons' claim for reimbursement and he is entitled to a reimbursement of $211,297.21 from the community. Ms. Clemons' share of the community is, thus, reduced by $105,548.63.
Further, Dr. Clemons agrees that, if he is entitled to his reimbursement, the equity in the building should be recalculated. Recall that the trial court calculated the equity in the building by taking the total original debt ($470,544.90) out of the agreed value of the property ($550,000) resulting in a total of $39,727.55. The correct calculation is to reduce $550,000, the agreed value of the building, by $386,049.08, the stipulated balance of the mortgage at time of partition, and not the original amount of the line of credit. The total equity in the building is then $163,950.92. Ms. Clemons' portion of the equity is, therefore, $81,975.46. Thus, the proper equalization payment should be recalculated using $81,975.46 as Ms. Clemons' half share of equity in the Rocking Rooster building and then reduced by her half share of the reimbursement, i.e., $105,548.63.
*1074 As discussed below, we do not disturb any other aspect of the trial court's original Judgment of Partition. Replacing the improper calculation of equity with the proper amount of $81,975.46 and reducing it by the reimbursement owed in the amount of $105,548.63, we amend the equalization payment owed Ms. Clemons to $101,915.89, rather than the $165,216.61 awarded by the trial court.

Educational Support Award
Both parties challenge the trial court's award under La. C.C. art. 121 for Ms. Clemons' financial support of Dr. Clemons during veterinary school after they were married. Dr. Clemons appeals both the propriety of granting the award and the amount, while Ms. Clemons argues for the amount of the award to be increased.
A professional degree or license is not community property and is not subject to community property distribution. Gill v. Gill, 39,406 (La.App.2d Cir.3/9/05), 895 So.2d 807; La. C.C. art. 121, 1990 revision comment (f). Article 121, instead, provides that:
In a proceeding for divorce or thereafter, the court may award a party a sum for his financial contributions made during the marriage to education or training of his spouse that increased the spouse's earning power, to the extent that the claimant did not benefit during the marriage from the increased earning power.
The sum awarded may be in addition to a sum for support and to property received in the partition of community property.
Dr. Clemons argues that Ms. Clemons does not qualify for this provision because, in their eight years of marriage, six years of which were after his graduation, she benefitted from his increased earning power. Ms. Clemons responds that she worked hard in the veterinarian practice of Dr. Clemons and contributed to its growth. She further asserts that the family residence, a mobile home worth no more than $8,000, is proof that she did not benefit from his increased earning power during their marriage. She claims that the award was proper considering her contributions to the growth of the business and that the parties separated just as Dr. Clemons was about to enjoy the greater earning potential of his degree by opening a new building for his veterinarian clinic.
In determining whether an award is warranted under article 121, a court should consider: (1) the claimant's expectation of shared benefit when the contributions were made (2) the degree of detriment suffered by the claimant in making the contributions, and (3) the magnitude of the benefit the other spouse received. Shewbridge v. Shewbridge, 31,170 (La. App.2d Cir.10/28/98), 720 So.2d 780; Barrow v. Barrow, 27,714 (La.App.2d Cir.2/18/96), 669 So.2d 622, writs denied, 96-1057 (La.6/21/96) 675 So.2d 1080, and 96-1072 (La.6/21/96), 675 So.2d 1080. Benefits from the increased earning power may be in the form of an improved lifestyle or an increase in community assets. "A spouse who contributed financially to the education or training of the other spouse in a marriage of significant duration may have already benefitted during the existence of the marriage by an improved standard of living or an accumulation of community property." La. C.C. art. 121, 1990 revision comment (e).
In reviewing the few cases that have addressed this provision, we find that cases which upheld an article 121 award were for separations that occurred shortly after the graduation of the supported spouse. Shewbridge, supra (separation a year after the husband obtained his commercial pilot's license); McConathy v. McConathy, 25,542 (La.App.2d Cir.2/23/94), 632 So.2d 1200, writ denied, *1075 94-0750 (La.5/6/94), 637 So.2d 1052 (parties separated during the final year of husband's schooling). This is the situation contemplated in the comments to article 121.
The usual situation that has prompted the making of awards of this kind in other states has involved a wife who supported her husband through professional school, only to be divorced by him shortly after his graduation. E.g., In re Marriage of Washburn, 101 Wash.2d 168, 677 P.2d 152 (1984); Lundberg v. Lundberg, 107 Wis.2d 1, 318 N.W.2d 918 (1982). Usually the wife has had little opportunity to share in the husband's enhanced income, and ordinarily little or no community property has accumulated to be divided between them.
La. C.C. art. 121, 1990 revision comment (c). Based on this language, one court denied the wife an article 121 award for her financial support of her husband during law school three years prior to their separation. Bourgeois v. Bourgeois, 00-2149 (La.App. 1st Cir.5/10/02), 818 So.2d 1005. The court held that, in those three years, the wife had benefitted from the husband's substantial increase in income focusing on her improved lifestyle; and, as such, she was not entitled to an award under article 121.
Under this analysis, we find that the trial court improperly awarded Ms. Clemons money under article 121. While in both the trial testimony and argument before this court counsel for Ms. Clemons stresses her lack of an improved lifestyle, this focus overlooks the total community assets accumulated during the Clemons' marriage. Most notably, the agreed value of their community business of Rocking Rooster was $161,883. Although Ms. Clemons contributed to this business with her own hard work, it was only made possible by Dr. Clemons' veterinarian degree and license. In addition, the parties had various accounts and other assets that amounted to significant community property. As indicated by the comments of article 121, this is not the situation that this article was designed to remedy.
Ms. Clemons further argues that an article 121 award is due because the marriage terminated just before Dr. Clemons was about to enjoy a higher earning level. The analysis under article 121 is not whether a spouse has reached his full earning potential at the time of the separation, but to what extent the supporting spouse did not enjoy the benefits of the other spouse's increased earning power. While Ms. Clemons had possibly anticipated greater financial benefits from Dr. Clemons' degree at the time she was supporting him through school, she received such sufficient benefits based on the accumulated community property. This is simply not a case where the supporting spouse, Ms. Clemons, has received little or no benefit from supporting the other spouse, Dr. Clemons, through his education. We, therefore, reverse the trial court's award under La. C.C. art. 121.

Valuation of Cattle and Horses
At the time of separation, the parties owned as community property twenty cows, eight calves and six horses. In addition, several calves were born after separation, but before partition. Those calves were community property as well. La. C.C. art. 484. The trial court valued the entire livestock at $35,000, subject to a deduction of $10,000 for feed and expenses related to the care of the animals.
Ms. Clemons appeals this valuation. She asserts that the best evidence of the value of the livestock is a Rocking Rooster balance sheet that was compiled by an accountant in March 2002. On the balance sheet, the cattle have a value of $40,000 and the horses have a value of $5,000. She also contends that Dr. Clemons consented *1076 to these valuations by submitting them to his bank when applying for loans. She insists that adding the sales proceeds of the calves born after the parties separated to this value is the best determination of the livestock's value. She further appeals the deduction for feed and expenses as lacking sufficient evidence to support such a claim.
To the contrary, Dr. Clemons testified that he did not provide the livestock value to the C.P.A. After establishing that he was a person familiar with the value of cattle and horses, he testified that he valued the livestock, both sold and remaining, at $30,767.64. He explained that he produced that value based on the records kept by the Louisiana Department of Live Culture for values of livestock. In his testimony, Dr. Clemons estimated that he spent $10,000 to maintain the animals since the separation in April 2002.
We cannot say the trial court manifestly erred in accepting Dr. Clemons' values instead of those shown on the March 2002 balance sheet. Dr. Clemons testified that he was familiar with the value of cattle and horses and the expenses involved in maintaining them. He further presented a methodology for how he determined those values. We, therefore, affirm the trial court's valuation of the cattle and horses and the deduction for expenses.

Deduction for Bad Debts
The parties agreed to value the business of Rocking Rooster at $550,000, reduced by the accounts receivable, i.e., the bad debts, the amount of which they dispute. Dr. Clemons submitted a list of accounts receivable as of April 8, 2002, totaling $7,612.52. The trial court determined that the proper deduction for bad debts was $4,000. Ms. Clemons appeals on the grounds that Dr. Clemons failed to generally prove that these accounts were uncollectible versus merely uncollected. She also challenges the uncollectibility of several specific accounts.
Ms. Clemons argues that Dr. Clemons did not take sufficient actions to collect the debts and, therefore, failed to prove that the debts were uncollectable. She specifically faults Dr. Clemons for not hiring a lawyer to pursue the accounts, not filing suit to collect those accounts, not turning the accounts over to a collections agency and not sending certified letters demanding payments. In contrast, Dr. Clemons testified that, while for certain accounts he did not write a letter, his general process was to send a letter every 30 days that an account was outstanding. The letters, according to Dr. Clemons, progressed from what he described as a "nice little letter" to a "real ugly letter" that included a notice that the account was being sent to a collection agency. On other accounts in which he did not write a letter, he made or attempted to make personal contact to get the account resolved. We find these actions are sufficient to establish that an account is uncollectable and qualifies as a bad debt.
Ms. Clemons also insists that certain accounts should not be considered bad debts for various reasons. For example, Dr. Clemons sold some cattle for one of the persons with an outstanding balance and failed to offset the outstanding balance from the sale proceeds. He justified his action for the sake of maintaining an amicable relationship with the person. According to Ms. Clemons, two of the outstanding accounts listed by Dr. Clemons were not listed on the veterinary clinic balance sheet used to value the business; therefore, it was improper to consider those accounts as bad debts to be deducted from the value of the business. Finally, Dr. Clemons had previously deducted one sizable outstanding account from his income taxes. Ms. Clemons argues that it *1077 would be unfair to then deduct this amount from the value of the business.
Even agreeing, in arguendo, with Ms. Clemons' assertions regarding these accounts, we cannot find that the trial court manifestly erred in determining the amount of bad debts allowed. Dr. Clemons originally sought a deduction for $7,612.52. When reduced by the amount of the accounts against which Ms. Clemons has specific arguments, the result is approximately $4,000, the amount awarded by the trial court.
The only debt possibly not included in this reduction is a sizeable debt owed by the David Wade Correctional Center, a government entity. Ms. Clemons questions how a debt owed to a government entity can be considered uncollectable. Dr. Clemons testified he made several attempts to collect the debt by contacting individuals at the facility. We accept that collecting from a government entity could be difficult. See, e.g., Baudoin v. Acadia Parish Police Jury, 96-1288 (La.App. 3d Cir.9/17/97), 702 So.2d 715, writ denied, 97-2546 (La.12/19/97), 706 So.2d 458. We, therefore, affirm the trial court's determination that $4,000 in bad debts should be deducted from the agreed value of the business of Rocking Rooster.

Reimbursement of Payments on Truck
As previously mentioned, the trial court granted Dr. Clemons exclusive use of a Ford F-350 truck from the time between separation and partition. Dr. Clemons used his separate property to pay off the loan on the truck after the termination of the community. Based on this loan payoff, the trial court granted Dr. Clemons ownership of the truck; and, on his motion for new trial, it assigned a zero value for the truck when partitioning the community. Ms. Clemons appeals the trial court rulings in those matters.
Dr. Clemons defends the valuation of the truck at zero as appropriate under Gill, supra. Under the facts of Gill, the wife sold a car in her exclusive use. The trial court assigned to her the small proceeds from the sale in excess of the loan amount, but rejected her claim for reimbursement of any payments made on the loan. This court affirmed both actions of the trial court. Dr. Clemons argues that, under Gill, he should be assigned the remaining "value" in the truck at the time of payoff; and, because the loan amount exceeded the agreed value, the value was zeroed out. He further paraphrases Gill as allowing reimbursements for the payoff of the mortgage balance, but prohibiting the reimbursement of monthly payments. We consider this a difference without a distinction and disagree with his application of Gill.
Our most recent controlling case on this issue is Mason v. Mason, 40,804 (La. App.2d Cir.4/19/06), 927 So.2d 1235, writ denied, 06-1524 (La.10/13/06), 939 So.2d 366. In Mason, we held that the parties were not entitled to reimbursement for payments from separate property on the community obligation on the cars assigned to each party's exclusive use because of the quickly depreciating nature of cars. Under this reasoning, whether used to make monthly payments or to pay off the entire loan amount, Dr. Clemons is not entitled to a reimbursement for payment of his truck loan, nor is he entitled to a zero value on the truck. Accordingly, we reverse the trial court and assess Dr. Clemons the value of the truck, $15,105, in determining his assets and deny his claim for reimbursement of any payments made on the loan for his truck.

Clemons v. Buffington
As mentioned above, Ms. Clemons also disputes classification by the trial court of the settlement proceeds in a suit styled, Clemons v. Buffington. Prior to termination of the marriage, Dr. Clemons *1078 recruited Dr. Buffington as a veterinarian for the Rocking Rooster clinic. Prior to separation, the employment of Dr. Buffington was terminated and she established her own clinic. Dr. Clemons filed suit alleging that Dr. Buffington violated her non-compete clause in the contract with him. The settlement of the suit was signed by both Dr. and Ms. Clemons. The trial court classified the $19,000 settlement proceeds as $10,000 community and $9,000 separate. Dr. Clemons did not appeal this classification. Ms. Clemons, however, argues that the entire amount should be deemed community property.
Only the correctness of the classification of the separate portion is at issue. Under these facts, at least part settlement proceeds compensate for the harm done to the goodwill of the business. Goodwill is the excess value of a business enterprise beyond the buildings, inventory and contracts. Gill, supra. If the underlying business is community, the goodwill will be considered as community property for purposes of partition. Id. Goodwill that represents future earnings of a spouse may be considered a personal attribute not subject to distribution as community. Id.; 16 Louisiana Civil Law Treatise § 2.6 (3d Ed.2007). In addition, where one spouse holds a professional degree or license and the goodwill results solely from that professional's personal relationship with clients, that goodwill is not included in the community. Gill, supra; Head v. Head, 30,585 (La.App.2d Cir.5/22/98), 714 So.2d 231; see, also, La. R.S. 9:2801.2. To the extent, therefore, that the suit between Dr. Clemons and Dr. Buffington arises from his personal relationship with his clients and injury to the future earnings of Dr. Clemons, the trial court properly classified the settlement proceeds as his separate property.
Included in the petition of Dr. Clemons in his suit against Dr. Buffington is an allegation that Dr. Buffington contacted existing clients of Rocking Rooster Veterinary Services in violation of the non-compete clause. In addition, the judgment after settlement reflects that Dr. Buffington, in exchange for payments to Dr. Clemons, received lists of Rocking Rooster's clients, particularly small animal clients. The record shows that at least part of the harm involved in the Buffington suit involved Dr. Clemons' relationships with his clients and any potential future income that he, through his professional services, would derive from them. We, therefore, cannot find that the trial court manifestly erred in determining that $9,000 of the settlement proceeds were separate property and we affirm the trial court's decision in that regard.

CONCLUSION
For the reasoning set forth above, we reverse the trial court's denial of Dr. Clemons' claim for reimbursement for payment of the mortgage and insurance premiums covering the community property. In addition, we amend the trial court's calculation of equity in the property. We reverse the trial court's award under La. C.C. art. 121 to Ms. Clemons. We affirm the trial court's valuation of the cattle and horses owned by the community as $35,000 and affirm its deduction of $10,000 for maintenance of the animals. We further affirm the trial court's valuation of bad debts as $4,000. We reverse the trial court's valuation of Dr. Clemons' truck at zero and assess Dr. Clemons with $15,105 for the value of the truck. Finally, we affirm the trial court's characterization of the settlement proceeds from Clemons v. Buffington. Accordingly, we amend Ms. Clemons' equalization award to $101,915.89. Costs of appeal are assessed equally to both parties.
*1079 AMENDED, AND AS AMENDED, AFFIRMED.

ON REHEARING
Before WILLIAMS, GASKINS, PEATROSS, MOORE & LOLLEY, JJ.
PEATROSS, J., on rehearing.
We grant rehearing as to the application of Dr. Clemons questioning the calculation of the equalization payment. We find that the judgment of the trial court does not clearly reflect what items were included in the equalization payment awarded to Ms. Clemons. Specifically, we note that it is not apparent from the judgment whether the trial court included in its equalization calculation the article 121 award for financial support during the veterinary education of Dr. Clemons. We have held in our original opinion that Ms. Clemons is not entitled to an award under article 121. We remand, therefore, for the narrow purpose of determining whether or not the article 121 award of $17,500 was included in the trial court's original equalization payment and to calculate the equalization payment accordingly, as consistent with the original opinion of this court. On rehearing, we further find that the recalculation of the equalization payment must reflect a reduction of one-half the agreed value of the mobile home or $5,000.
Rehearing is denied as to all other issues raised by either party in this case.
REHEARING GRANTED IN PART, DENIED IN PART AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THE INSTRUCTIONS CONTAINED HEREIN.