GUIDRY, J.
12This appeal arises from a trial court judgment partitioning the community of acquets and gains formerly existing between Troy Benoit and Tammy Williams Benoit. For the reasons that follow, we vacate the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
Troy and Tammy Benoit were married on December 31, 2000. This was Troy and Tammy’s second marriage to one another. On March 8, 2006, Troy filed a petition for La. C.C. art. 102 divorce. In his petition, Troy sought, among other things, partition of the community of acquets and gains in accordance with La. R.S. 9:2801. Tammy filed an answer and reconventional demand also seeking partition of community property. A final judgment of divorce was subsequently rendered on December 15, 2006.
On January 14, 2008, Tammy filed a detailed descriptive list of assets and liabilities of the community. Troy filed a sworn detailed descriptive list on April 14, 2008 and filed an amended detailed descriptive list on August 6, 2008. Thereafter, Troy and Tammy filed a combined detailed descriptive list on October 28, 2009.
A trial of the community property partition was held on January 5, 2010. Prior to the presentation of evidence, Troy and Tammy stipulated as to the classification, allocation, and/or valuation of certain assets, liabilities, and claims for reimbursement. Following a trial on the remaining contested issues, the trial court issued reasons for judgment on February 8, 2010, and signed a judgment on April 8, 2010, partitioning the community of acquets and gains. Tammy and Troy both filed motions for new trial, which were denied. Tammy and Troy now separately appeal from the trial court’s April 8, 2010 judgment.
|sDISCUSSION

Legal Principles and Standard of Review

The provisions of La. R.S. 9:2801 set forth the procedure by which community property is to be partitioned when the spouses are unable to agree on a partition of community property. La. R.S. 9:2801 A; Hoover v. Hoover, 10-1245, p. 3 (La. App. 1st Cir.3/17/11), 62 So.3d 765, 767. Particularly, La. R.S. 9:2801 A(4) provides, in pertinent part:
A. When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising either from the matrimonial regime, or from the co-ownership of former community proper *1019 ty following termination of the matrimonial regime, either spouse, as an incident of the action that would result in a termination of the matrimonial regime or upon termination of the matrimonial regime or thereafter, may institute a proceeding, which shall be conducted in accordance with the following rules:
[[Image here]]
(4) The court shall then partition the community in accordance with the following rules:
(a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
(b) The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.
(c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.
(d) In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security.
It is well settled that a trial court has broad discretion in adjudicating issues raised by divorce and partition of the community. A trial judge is afforded a great |4deal of latitude in arriving at an equitable distribution of the assets between the spouses. Factual findings and credibility determinations made in the course of valuing and allocating assets and liabilities in the partition of community property may not be set aside absent manifest error. Clemons v. Clemons, 42,129, p. 3 (La.App. 2nd Cir.5/9/07), 960 So.2d 1068, 1071, writ denied, 07-1652 (La.10/26/07), 966 So.2d 583. However, the allocation or assigning of assets and liabilities in the partition of community property is reviewed under the abuse of discretion standard. Legaux-Barrow v. Barrow, 08-530, p. 5 (La.App. 5th Cir.1/27/09), 8 So.3d 87, 90, writ not considered, 09-0447 (La.4/13/09), 5 So.3d 152.

Allocation of Property Located at 1181 Clipper Drive

Tammy asserts that the trial court erred in allocating the family home located at 1181 Clipper Drive, Slidell, Louisiana, to Troy pursuant to the provisions of La. R.S. 9:2801, because the home was not community property, but was eo-owned property, having been acquired by the parties prior to their marriage.
Though originally listed on the parties’ combined detailed descriptive list as a community asset, the documentary evidence and testimony admitted at the partition proceeding demonstrates that the property was actually purchased by Troy and Tammy ten days prior to their second marriage. The parties do not dispute that based on this evidence, the home is not *1020 community property, but rather, is co-owned by the parties in indivisión. Accordingly, the partition of this piece of property is governed by the articles of the Civil Code concerning ownership of property in indivisión, La. C.C. arts. 707-818, not by La. R.S. 9:2801.
Louisiana Civil Code article 797 provides “[ojwnership of the same thing by two or more persons is ownership in indivisión. In the absence of other provisions of law or juridical act, the shares of all co-owners are presumed to be equal.” Any co-owner has a right to demand partition of a thing held in indivisión. La. C.C. art. 807. The mode of partition may be determined by agreement of all the co-owners, in the |,r,absence of which a co-owner may demand judicial partition. La. C.C. art. 809. Louisiana Civil Code article 810 requires the court to partition in kind when the thing held in indivisión is susceptible to division into as many lots of nearly equal value as there are shares and the aggregate value of all lots is not significantly lower than the value of the property in the state of indivisión. La. C.C. art. 810. When the thing held in indivisión is not susceptible to partition in kind, the court shall decree a partition by licitation or by private sale, and the proceeds shall be distributed to the co-owners in proportion to their shares. La. C.C. art. 811.
Therefore, because the family home located at 1181 Clipper Drive is not susceptible to division into lots, the home has to be sold, and the proceeds distributed equally between Troy and Tammy.

Value of Homeowner’s Insurance Proceeds

Tammy next asserts that the trial court erred in valuing the amount of homeowner’s insurance proceeds received by Troy for damage to the family home as a result of Hurricane Katrina.[1] Prior to the presentation of evidence at the community property partition proceeding, the parties stipulated that the value of the insurance proceeds was $170,577.62. Both Troy and Tammy testified that two insurance payments, one for $25,000.00 and one for $55,100.00, had already been divided between them. Accordingly, the trial court, in valuing this asset, deducted these amounts from the total amount stipulated to between the parties. Because Troy failed to provide an accounting of the insurance proceeds prior to trial, and because the evidence does not conclusively establish that these two payments were excluded in arriving at the stipulated value of the insurance proceeds, we find the trial court’s valuation of this community asset to be reasonably supported by the record and does not constitute an abuse of discretion. See Rao v. Rao, 05-0059, p. 6 (La. App. 1st Cir.11/4/05), 927 So.2d 356, 360-361, writ denied, 05-2453 (La.3/24/06), 925 So.2d 1232.

Reimbursement Claims in Favor of Troy

Tammy asserts that Troy is not entitled to reimbursement for his payment of several community obligations during the existence of the community, including the first and second mortgages on the family home, property taxes, income taxes, and a truck note, because these obligations were paid with community, and not his separate funds. Louisiana Civil Code article- 2365 provides, in part:
If separate property of a spouse has been used either during the existence of the community property regime or thereafter to satisfy a community obligation, that spouse is entitled to reimbursement for one-half of the amount or *1021 value that the property had at the time is was used.
Property of married persons is generally characterized as either separate or community. La. C.C. art. 2385. Louisiana Civil Code article 2338 provides:
[CJommunity property comprises: property acquired during the existence of the legal regime through effort, skill, or industry of either spouse; property acquired with community things or with community and separate things, unless classified as separate property under Article 2341; property donated to the spouses jointly; natural and civil fruits of community property; damages awarded for loss or injury to a thing belonging to the community; and all other property not classified by law as separate property.
Regarding the classification of property as separate, La. C.C. art. 2341 provides, in part, that a spouse’s separate estate “comprises ... property .acquired by a spouse prior to the establishment of a community property regime [and] property acquired by a spouse with separate things or with separate and community things when the value of the community thing is inconsequential in comparison with the value of the separate things used.”
Property in the possession of a spouse during the existence of the community property regime is presumed to be community, but either spouse may rebut the presumption. La. C.C. art. 2340. The spouse seeking to rebut the presumption bears the burden of proving by a preponderance of the evidence that property is separate in |7nature. Hoover, 10-1245 at p. 7, 62 So.3d at 770. A trial court’s finding regarding the nature of property as being either community or separate is a factual determination subject to the manifest error/clearly wrong standard of review. Corkern v. Corkern, 05-2297, p. 6 (La.App. 1st Cir.11/3/06), 950 So.2d 780, 785, writ denied, 06-2844 (La.2/2/07), 948 So.2d 1083.
At the partition hearing, the parties testified that subsequent to their first marriage, but prior to their second marriage, Troy received settlement funds as a result of a motorcycle accident he had during the first marriage, which had rendered him a paraplegic. Troy deposited these funds into an investment account with Merrill-Lynch, and subsequently with Smith-Barney and Raymond James. These accounts generated interest and dividends, which were placed into a joint checking account bearing Troy’s and Tammy’s names, which was attached to Troy’s investment accounts. The parties stipulated that the interest and dividends generated from these separate investment accounts during the existence of the community totaled $119,859.00. Bank records admitted into evidence at the hearing reflect that expenses of the parties, including community obligations, were paid out of the joint checking account.
From our review of the record, it is evident that the community obligations exceeded the value of the interest and dividends placed into the joint checking account. The stipulated amounts paid during the second marriage for the first mortgage, homeowner’s insurance, income taxes, and property taxes totaled $113,364.00. Additionally, during the marriage $1,049.00 was paid on the second mortgage and $1,986.00 was paid on the note for Troy’s truck. These community obligations, alone, total $116,399.00. Further, the parties do not dispute that additional community obligations were paid from the checking account, including the |RCapital One line of credit, credit cards, and expenses for the management *1022 of the investment accounts, which generated the interest and dividends.[2]
Additionally, Troy’s testimony and the testimony of Kurt Arcement, manager of Troy’s investment accounts for over ten years, indicated that additional funds necessary to cover expenditures of the parties were automatically transferred into the joint checking account from the separate investment accounts. For the years 2002-2005, between $49,296.00 and $63,017.00 in separate funds were deposited annually into the joint checking account to cover additional expenditures.[3]
Tammy asserts because separate funds were commingled with community funds, all funds in the joint checking account became community. However, in the instant case, the separate funds were not mixed with community funds such that they are no longer capable of identification, and the amount of separate funds deposited into the account far exceeds the amount of interest and dividends deposited into the account. See Granger v. Granger, 98-429, p. 6 (La.App. 3rd Cir.12/9/98), 722 So.2d 107, 111; see also La. C.C. art. 2341. Further, looking at the figures stipulated to or admitted into evidence regarding the community obligations paid out of the joint checking account, the amount of interest and dividends was insufficient to cover those expenditures. Accordingly, we cannot say that the trial court erred in finding that separate funds were used during the community to pay the first and second mortgages on the family home, homeowner’s insurance, income taxes, property taxes, and Troy’s truck note, and in awarding Troy reimbursement for one-half of those payments,
| ⅜Allocation of Interest and Dividends to Troy
Tammy asserts that the trial court erred in allocating to Troy the interest and dividends generated on Troy’s separate investment accounts during the community, offset by the amount paid to Mr. Arcement for management of the separate and community property in the accounts, because these were not an asset or an obligation of the community in existence at the time of trial.
In’ her reasons for judgment, the trial court found that the value of the Smith Barney checking account was $119,859.00, less the management fees of $41,666.00 charged by Mr. Arcement. However, we find that the trial court’s factual finding is not reasonably supported by the record. The parties stipulated pri- or to the hearing that the amount of interest and dividends generated during the existence of the community on Troy’s separate property totaled $119,859.00. The parties did not, however, stipulate that this was the value of that account, nor is there any evidence in the record to support that this was the value of this asset at the time of trial. See La. R.S. 9:2801 A(4)(a).
According to the evidence introduced at the hearing, the interest and dividends deposited into the checking account were depleted during the community such that *1023 additional separate funds had to be deposited into the account to cover expenditures. Additionally, the fees charged by Mr. Arcement for management of Troy’s accounts were paid each quarter, and were not shown to be a debt owed by the community at the time of trial. Therefore, from our review of the record, the trial court erred in finding that the amount of interest and dividends generated during the community was an existing asset of the community at the time of trial, and likewise erred in finding that the management fees charged by Mr. Arcement were a debt owed by the community at the time of trial. Accordingly, the trial court abused its discretion in allocating the amount of interest and dividends generated during the community, less an amount for management fees charged by Mr. Arcement, to Troy.
| Allocation and Valuation of Capital One Line of Credit
Tammy next argues that the trial court erroneously allocated an obligation in the amount of $81,161.99 to her, representing an amount allegedly due on a Capital One line of credit obtained on behalf of TAT, Real Estate, L.L.C., and guaranteed by Troy and Joseph Lamy.
During the marriage, Troy and Tammy formed TAT Real Estate, L.L.C. The original members were Troy, Tammy, and Tammy’s brother. However, Joseph “Bubby” Lamy, Troy’s good friend and Tammy’s current husband, was substituted for Tammy’s brother as a member of the LLC. In April 2005, TAT Real Estate purchased real property at 792 Pine Tree Street, Slidell, Louisiana, which was financed by a second mortgage on the Clipper Drive property. TAT Real Estate bought the Pine Tree property with the intention of making repairs to the home and “flip[ping] it.” Thereafter, Troy and Mr. Lamy made repairs to the home, which were financed by a line of credit with Capital One. After the Pine' Tree property was fully repaired, it sustained significant damage from Hurricane Katrina. Because there was no insurance on this property, Troy made draws on the line of credit to make needed repairs.
The parties do not dispute that the line of credit was originally obtained during the existence of the community. Rather, Tammy asserts that the trial court erred in allocating to her an obligation in the amount of $81,161.99, which represented amounts drawn on the line of credit subsequent to the termination of the community.
An obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses is a community obligation. La. C.C. art. 2360. However, an obligation incurred by a spouse prior to the establishment or after termination of a community property regime is a separate obligation. See La. C.C. art. 2363 and 1979 Revision Comment (a).[4]
In Troy admitted that he made draws on the line of credit subsequent to the termination of the community in order to make repairs to the Pine Tree property following Hurricane Katrina. Troy, nevertheless, argues that the additional indebtedness is attributable to the community, *1024 because he had a duty to preserve and prudently manage former community property under his control.
Louisiana Civil Code article 2369.3 provides, in part, that a “spouse has a duty to preserve and to manage prudently former community property under his control ... in a manner consistent with the mode of use of that property immediately prior to termination of the community regime.” Article 2369.3, however, is usually addressed when a former spouse asserts a claim for compensation due to the breach of this article concerning management of a community business, or when a former spouse asserts a claim for reimbursement for one-half of the expenses incurred in compliance with the obligation imposed by this article. See La. C.C. art. 2369.3, 1995 Comment (f); see also Knighten v. Knighten, 00-1662, pp. 3-5 (La.App. 1st Cir.9/28/01), 809 So.2d 324, 328-329, writ denied, 01-2846 (La.1/4/02), 805 So.2d 207; Clemons, 42,129 at p. 6, 960 So.2d at 1073. Contrary to Troy’s argument on appeal, we do not find that this article applies to the classification of an obligation as community or separate or to the valuation of that asset or liability.[5] Rather, those determinations are controlled by La. C.C. arts. 2359-2363 and La. R.S. 9:2801 A(4).
1 ^Therefore, because Troy admitted that he made draws on the line of credit subsequent to the termination of the community, the trial court erred in finding that the amount of the community obligation for the Capital One line of credit was $31,161.99. Rather, the evidence in the record establishes that at the time of the termination of the community, the Capital One line of credit had a balance of $3,836.10. Accordingly, that is the amount on the Capital One line of credit for which the community is liable. Furthermore, because of the nature of this debt, we find that the obligation should be allocated to Troy. See La. R.S. 9:2801 A(4)(c).

Reimbursement for Payments Made on Capital One Line of Credit

Tammy also contends that the trial court erred in recognizing a reimbursement claim in favor of Troy and against her in the amount of $6,161.50, representing one-half of the alleged payments made by Troy on the Capital One line of credit after the termination of the community. As stated above, the majority of the outstanding debt obligation on the Capital One line of credit was incurred by Troy subsequent to the termination of the community. As of the termination date of the community, the balance on the line of credit was $3,836.10. Because Troy is only entitled to reimbursement for one-half of his separate property that was used to satisfy the community obligation, he is only entitled to reimbursement for one-half of the balance owed on the line of credit as of the date of termination of the community, or $1,918.05.[6] See La. C.C. art. 2365.

*1025
Reimbursement Funds Used to Purchase Nissan Maxima

Tammy asserts that the trial court erred in recognizing a claim for reimbursement made by Troy for one-half of separate funds allegedly used to purchase a Nissan Maxima. In its reasons for judgment, the trial court stated that “[i]t |1sis undisputed that the Maxima was purchased during the marriage with [h]us-band’s separate funds.” However, according to the record, both Troy and Tammy testified that Troy purchased the Maxima with funds he received from his personal injury settlement prior to their second marriage, though the Maxima was titled in both of their names. Accordingly, because the vehicle is not community property, but is co-owned property or separate property acquired prior to the marriage, Troy is not entitled to reimbursement for separate funds used to purchase the vehicle. See La. C.C. arts. 2365 and 2367.

Reimbursement for Credit Card Expenditures

The trial court awarded Troy $10,524.00 in reimbursement, representing one-half of expenditures made by Tammy on Discover, Chase Visa, and Citi Dividend Platinum credit cards during the existence of the community. Tammy does not dispute that she used these credit cards during the existence of the community for the benefit of the community. However, she asserts that the funds used to pay the credit card charges were community funds, and therefore, Troy is not entitled to reimbursement for payment of the community obligation with community funds. See La. C.C. art. 2365.
This argument is identical to the argument raised with regard to the reimbursement awarded to Troy for payment of the first and second mortgages on the family home, income taxes, property taxes, and truck note. For the reasons previously discussed, we find no error in the trial court’s determination that the credit card debt is a community obligation that was paid with separate funds, for which Troy is entitled to reimbursement.

Recognition and/or Value of Community Obligation to Capital One Visa

The trial court found that a community obligation in the amount of $4,168.85 was owed to Capital One Visa for the account ending in 237. However, from our review of the record, we find no evidence to support this conclusion. Exhibit 20 114offered into evidence by Troy at the partition proceeding contains statements from May 2006, which is two months after the termination of the community of ac-quets and gains, through the date of trial. Further, the May 2006 statement indicates that the previous balance on the account was $0. Therefore, because the record is devoid of evidence that an obligation to Capital One Visa existed during the community property regime, the trial court erred in allocating this obligation, in the amount of $4,168.85, to Troy.

Reimbursement for Post-Termination Payments to CLECO

Tammy asserts that the trial court erred in recognizing a reimbursement claim in favor of Troy for one-half of the amounts paid to CLECO for service provided to the Pine Tree property after the termination of the community. Troy argues that the CLECO bills are a communi *1026 ty obligation, which he- paid with separate funds, and therefore, he is entitled to reimbursement under La. C.C. art. 2365. However, Troy admits that the charges for which he seeks reimbursement were not incurred during the community, but were incurred after the termination of the community. Accordingly, this indebtedness is a separate obligation, paid with separate funds. See La. C.C. art. 2363 and 1979 Revision Comment (a). For the reasons previously stated with regard to the allocation and valuation of the-Capital One line of credit and reimbursement awarded to Troy for payments made on the line of credit, we find that the trial court erred in awarding Troy reimbursement for one-half of the amounts paid to CLECO after the termination of the community.

Reimbursement for Post-Termination Payments on Community Automobile

Troy asserts that the trial court erred in denying his claim for reimbursement for payments made on a community automobile following the termination of the community with separate funds.
Louisiana Civil Code article 2365 currently provides, in pertinent part:
If separate property of a spouse has been used either during the existence of the community property regime or thereafter to satisfy a | ^community obligation, that spouse is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used.
If the community obligation was incurred to acquire ownership or use of a community corporeal movable required by law to be registered, and separate property of a spouse has been used after termination to satisfy that obligation, the reimbursement claim shall be reduced in proportion to the value of the claimant’s use after termination of the community property regime. The value of that use and the amount of the claim for reimbursement accrued during the use are presumed to be equal.
Article 2365 was amended by Acts 2009, No. 204, § 1, which added the second paragraph regarding registered community corporeal movables. Prior to the 2009 amendment, Article 2365 provided, in pertinent part:
If separate property of a spouse has been used to satisfy a community obligation, that spouse, upon termination of the community property regime, is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. The liability of a spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations.
Troy asserts that the amended version of La. C.C. art. 2365 was not in effect during the period for which he seeks reimbursement, ie. March 2006 through 2009; and during that period, the jurisprudence in this circuit allowed these types of reimbursement claims. See Williams v. Williams, 509 So.2d 77 (La.App. 1st Cir. 1987). Further, Troy asserts because the 2009 amendment to La. C.C. art. 2365 represents a substantive change in the law, it can be applied prospectively only. See La. C.C. art. 6.
In determining whether a newly-enacted provision is to be applied prospectively only, or may also be applied retroactively, La. C.C. art. 6 requires a two-fold inquiry. First, the court must determine whether the amendment to the statute expresses the legislative intent regarding retroactive or prospective application. Keith v. U.S. Fidelity and Guaranty Co., 96-2075, p. 6 (La.5/9/97), 694 So.2d 180, 183. If no such intent is expressed, the *1027 enactment must be classified as either substantive, procedural, or interpretative. Keith, 96-2075 at p. 6, 694 So.2d at 188.
|1fiIn enacting the amended version of Article 2865, the legislature did not express its intent regarding retroactive or prospective application. Therefore, we must determine whether the 2009 amendment was substantive or interpretive.
Substantive laws either establish new rules, rights, and duties or change existing ones. Interpretive laws, on the other hand, do not create new rules, but merely establish the meaning that the interpreted statute had from the time of its initial enactment. It is the original statute, not the interpretive one, that establishes the rights and duties. St. Paul Fire & Marine Insurance Co. v. Smith, 609 So.2d 809, 817 (La.1992). When an existing law is not clear, a subsequent statute clarifying or explaining the law may be regarded as interpretive, and the interpretive statute may be given retroactive effect because it does not change, but merely clarifies, pre-existing law. St. Paul Fire & Marine Insurance Co., 609 So.2d at 817.
As noted by the Louisiana Supreme Court, the suggested distinction between interpretive legislation “clarifying,” and substantive legislation “amending” or “changing,” existing law is an obscure one. There is no bright line between substantive laws, which change existing standards, and interpretive laws, which change existing standards by re-defining and returning to their ostensible “original” meaning. St. Paul Fire & Marine Insurance Co., 609 So.2d at 819.
The revision comments to Article 2365 state that the second paragraph of this Article is new and incorporates the substantial volume of Louisiana jurisprudence that has limited a spouse’s right to reimbursement for the use of separate funds after termination of the community property regime to satisfy a community note obligation for an automobile of which the claimant spouse has the exclusive use. La. C.C. art. 2365, 2009 Revision Comment (b). The First Circuit, however, did not follow the other four circuits in so limiting a spouse’s right to reimbursement, finding that the plain language of then Article 2365 did not provide a basis for treating reimbursement claims differently depending on the nature of the property for which 117the debt was paid. See Williams, 509 So.2d at 80. Additionally, 2009 Revision Comment (c) notes that the jurisprudence has previously reduced a spouse’s right to reimbursement without any authority in the Civil Code.
Because the original codal article did not distinguish reimbursement claims based on the nature of the property subject to the obligation, and it was not until the 2009 amendment that a claimant spouse’s right to reimbursement was reduced, or effectively eliminated, based on the nature of the property, we find that the 2009 amendment is substantive, in that it represents a distinct change in the rights of the parties. Under La. C.C. art. 6, a substantive change in the law cannot be applied retroactively.
Therefore, because Article 2365, as enacted prior to the 2009 amendment, did not limit a claimant spouse’s right to reimbursement for one-half of the payments made on a community vehicle after termination of the community, and this court applied the plain language of the statute as written, we find that the trial court erred in failing to award Troy reimbursement for one-half of the monthly notes paid on the community automobile from the time of the termination of the community until the effective date of the 2009 amendment, August 15, 2009. Accordingly, we reverse the trial court judg- *1028 merit on this issue and award Troy $6,796.50 in reimbursement for one-half of the truck note payments.

Reimbursement of Funds to Repair Clipper Drive Residence

Troy asserts that the trial court erred in denying his claim for reimbursement for separate funds used to repair the Clipper Drive home after Hurricane Katrina. In denying Troy’s reimbursement claim, the trial court found that Troy’s failure to timely file an accounting of the homeowner’s insurance proceeds, as required by two previous consent judgments, precluded him from introducing evidence accounting for funds used to make repairs to the residence.
| lsFirst, we reiterate that the Clipper Drive home is not community property but is co-owned by Troy and Tammy in indivi-sión. Accordingly, the Civil Code articles regarding co-ownership apply. Louisiana Civil Code article 806 provides:
A co-owner who on account of the thing held in indivisión has incurred necessary expenses, expenses for ordinary maintenance and repairs, or necessary management expenses paid to a third person, is entitled to reimbursement from the other co-owners in proportion to their shares.
Though Troy was precluded from introducing evidence at the community property partition proceeding of the repairs made to the Clipper Drive home following Hurricane Katrina, he did proffer receipts and pictures of the repairs. However, even considering the proffered evidence, we find that Troy failed to put forth sufficient evidence to establish a claim for reimbursement.
Troy testified that he made repairs to the Clipper Drive home, but he did not provide details as to the total repairs made, nor did he quantify the amount of funds used to make such repairs. Additionally, though the proffered evidence consists of photos of the repairs and numerous receipts, Troy admitted in his testimony that the proffered receipts were for repairs made to the Clipper Drive residence and the Pine Tree property. Troy, however, did not offer any testimony or evidence separating the expenses paid for repairs to the Clipper Drive home from those made to the Pine Tree Street property. Finally, when combined with the fact that Troy failed to provide a complete and detailed accounting of the homeowner’s insurance proceeds he received as required by two previous consent judgments, it is impossible for us to determine from the record before us what expenses were incurred in making the repairs to the Clipper Drive home or the amount thereof. Therefore, we find no error in the trial court’s denial of this reimbursement claim.

Reimbursement to Troy for Mortgage Payments on Clipper Drive Residence

Troy asserts that the trial court erred in valuing his claim for reimbursement for payments made on- the mortgage on 1181 Clipper Drive. Specifically, Troy contends 119that the trial court erred in reducing reimbursement for one-half of the mortgage payments based on the value of Troy’s enjoyment of the property under the Civil Code articles regarding co-ownership.
In accordance with La. C.C. art. 806, a co-owner who has incurred necessary expenses or maintenance and management expenses is entitled to reimbursement from the other co-owners, except that if he who incurred the expenses had the enjoyment of the thing, the reimbursement is to be reduced in proportion to the value of his enjoyment. A mortgage, however, is not such an expense. It is a nonpossessory right created over property to secure the *1029 performance of an obligation. Lupberger v. Lupberger, 00-2571, p. 11 (La.App. 4th Cir.12/5/01), 805 So.2d 264, 271, writ denied, 02-0653 (La.5/24/02), 816 So.2d 308; Roque v. Tate, 93-389, p. 3 (La.App. 5th Cir.2/9/94), 631 So.2d 1385, 1386, writ not considered, 94-0625 (La.4/29/94), 637 So.2d 457; see also La. C.C. art. 3278.
Furthermore, though the property itself was co-owned by the parties in indi-visión, the mortgage at issue was incurred by the spouses during the existence of the community and as such, it is presumed to be a community obligation. See La. C.C. arts. 2360 and 2361. Troy and Tammy do not dispute that the mortgage on the Clipper Drive home is a community obligation. Therefore, the controlling law is not the Civil Code articles relating to co-ownership of property, but La. C.C. art. 2365, regarding reimbursement for satisfaction of a community obligation with separate property. See Lupberger, 00-2571 at p. 11, 805 So.2d at 271. Accordingly, the trial court erred in applying La. C.C. art. 806 to reduce Troy’s reimbursement claim.
Tammy, however, asserts that even if the trial court erred in reducing Troy’s mortgage reimbursement claim based on the value of Troy’s enjoyment of the property under La. C.C. art. 806, which the trial court determined to be the rental value of the property, it was still correct in deducting the rental value of the property under La. R.S. 9:374.
| gpLouisiana Revised Statute 9:374 provided, in part:[7]
B. When the family residence is community property or the spouses own community movables or immovables, after or in conjunction with the filing of a petition for divorce or for separation of property in accordance with Civil Code Article 2374, either spouse may petition for, and a court may award to one of the spouses, after a contradictory hearing, the use and occupancy of the family residence and use of community mova *1030 bles or immovables to either of the spouses pending further order of the court. In these cases, the court shall inquire into the relative economic status of the spouses, including both community and separate property, and the needs of the children, if any, and shall award the use and occupancy of the family residence and the use of any community movables or immovables to the spouse in accordance with the best interest of the family. If applicable, the court shall consider the granting of the occupancy of the family home and the use of community movables or immovables in awarding spousal support.
C. A spouse who uses and occupies or is awarded by the court the use and occupancy of the family residence pending either the termination of the marriage or the partition of the community property in accordance with the provisions of La. R.S. 9:374(A) or (B) shall not be liable to the other spouse for rental for the use and occupancy, except as thereafter provided. If the court awards use and occupancy to a spouse, it shall at that time determine whether or not to award rental for the use and occupancy and, if so, the amount of the rent. The parties may agree to defer the rental issue for decision in the partition proceedings. If the parties agreed at the time of the award of use and occupancy to defer the rental issue, the court may make an award of rental retroactive to the date of the award of use and occupancy. [Emphasis added.]
Assuming, arguendo, that Tammy has a claim for rental reimbursement for Troy’s use and occupancy of the family residence that was co-owned, and not community property, we find that she failed to preserve this claim under the provisions of La. R.S. 9:374(C).[8]
In her answer and reconventional demand to the petition for 102 divorce filed by Troy, Tammy sought use and occupancy of the family home, and alternatively, requested the assessment of a rental value for Troy’s exclusive use of the home. By consent judgment dated August 17, 2006, the trial court ordered:
[T]hat the motions filed on behalf of Troy Benoit and Tammy Williams Be-noit for exclusive use and occupancy of the family home shall be continued indefinitely. Tammy Williams Benoit’s rule for rental value assessment against Troy Benoit should the Court award exclusive use and occupancy of the family home to Troy Benoit shall be reserved to her and to be determined at the time of the partition of the community property. [Emphasis added.]
However, the exclusive use and occupancy of the family home was never awarded to Troy by the court. Rather, Tammy testified at the hearing that she did not pursue her claim for exclusive use and occupancy of the family home, because following Hurricane Katrina, Troy had no *1031 where else to go and she did not want to “put Troy on the street.” Further, though Tammy stated that there was an agreement to allow Troy to remain in the family home, because she had other living arrangements, this agreement was never reduced to judgment, nor is there evidence |athat at the time the parties allegedly made an agreement regarding use and occupancy of the family home they also agreed to defer the rental issue.
From our review of the record, and based on the clear language of the August 17, 2006 consent judgment, we do not find that the parties contemporaneously agreed at the time of the award of use and occupancy of the family home to defer the rental issue as required by La. R.S. 9:374(C). As such, Troy is not liable to Tammy for rental for his use and occupancy under La. R.S. 9:374.
Therefore, based on the foregoing, we find that the trial court abused its discretion in offsetting the amount of reimbursement owed to Troy for payments made on the mortgage on 1181 Clipper Drive by the rental value of the property. Accordingly, we find that Troy is entitled to reimbursement for one-half of the total mortgage payments made during the community and up to the time of trial in the amount of $67,802.50.

Deferral and Security of Equalization Payment

Finally, Troy asserts that the trial court erred in permitting Tammy eighteen months to make the equalizing cash payment without proper security. According to La. R.S. 9:2801 A(4)(d), in the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court may direct. Further, the court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security. La. R.S. 9:2801 A(4)(d). Accordingly, a trial court is only required to order the payment of an equalizing sum of money. The determinations of whether that sum should be cash or deferred, secured or unsecured and what terms and conditions, if any, should be applied to the payment are left to the discretion of the | ^trial court. See Trahan v. Trahan, 10-0109, p. 7 (La.App. 1st Cir.6/11/10), 43 So.3d 218, 224, writ denied, 10-2014 (La.11/12/10), 49 So.3d 889.
In its judgment, the trial court ordered that “Tammy Williams Benoit shall pay to Troy Benoit an equalizing cash payment of $21,993.18, which equalizing cash payment shall act as a mortgage on 792 Pine Street, Slidell, Louisiana until paid. The equalizing cash payment shall accrue legal interest until paid. Tammy Williams Benoit shall have eighteen (18) months to remit the equalizing payment to Troy Benoit.” However, based on the findings of this court, Tammy’s equalizing cash payment has drastically increased.[9] Therefore, giv *1032 en the circumstances, this matter should be remanded to the trial court for reconsideration.
CONCLUSION
For the above and foregoing reasons, we vacate the trial court’s judgment of partition and remand this matter to the trial court to enter a new judgment in conformity with the findings of this court and to fashion a repayment plan under such terms and conditions as the trial court deems appropriate.
JUDGMENT VACATED AND REMANDED WITH INSTRUCTIONS.

. We note that neither Tammy nor Troy dispute the trial court’s determination that the insurance proceeds áre an asset of the community.

. There were additional community obligations paid during the existence of the community, for which Troy sought or was awarded reimbursement. These awards are either not at issue on appeal, or are raised by Tammy as additional issues in the appeal.

. Mr. Arcement deducted fees charged for his management of the investment accounts from the annual totals for interest and dividend income. Although Tammy contests the allocation of the total amount of these fees, stipulated to be $41,666.00 during the existence of the community, to Troy as a community debt existing at the time of trial, which argument is addressed below, she does not assert that the fees paid during the marriage were not a community obligation.

. Louisiana Civil Code article 2363 was amended in 2009 to remove the last sentence of the first undesignated paragraph, which had read: "An obligation incurred after termination of a community property regime ... is a separate obligation.” However, comment (a) of the 2009 Revision Comments to Article 2363 clarified that the classification under the former article was removed as being conceptually flawed, because once the community regime has terminated, an obligation incurred by a spouse is neither separate nor community, and it has no impact upon the community property regime.

. Troy cites Clemons as support for his argument that an obligation incurred after the community's termination, when it is made in furtherance of a party's obligation under La C.C. art. 2369.3, is nonetheless a community obligation. However, in Clemons, the Second Circuit Court of Appeal found that a spouse's conversion of a line of credit into a permanent loan and the subsequent refinancing of that loan did not change the nature or origin of the duty to repay and the debt remained a community obligation. Clemons, 42,129 at p. 6, 960 So.2d at 1073. Conversely, in the instant case, Troy changed the nature of the debt by incurring additional indebtedness by his post-termination draws on the line of credit. Therefore, Troy's argument is without merit.

. We previously pointed out that under La. C.C. art. 2369.3, a spouse who incurs expenses in compliance with the obligation to preserve and prudently manage former community property is entitled to reimbursement *1025 for one-half of the costs in accordance with the general principles of laws of co-o’wnership. However, Troy did not formally raise this claim for reimbursement in the trial court, nor did he present evidence as to the actual expenses incurred in repairing the Pine Tree property or the costs associated therewith.

. Louisiana Revised Statute 9:374 was amended by 2009 La. Acts 204, § 2, and now provides, in part:
B. When the family residence is community property or is owned by the spouses in indivisión, or the spouses own community movables or immovables, after or in conjunction with the filing of a petition for divorce or for separation of property in accordance with Civil Code Article 2374, either spouse may petition for, and a court may award to one of the spouses, after a contradictory hearing, the use and occupancy of the family residence and use of community movables or immovables pending partition of the property or further order of the court, whichever occurs first. In these cases, the court shall inquire into the relative economic status of the spouses, including both community and separate property, and the needs of the children, if any, and shall award the use and occupancy of the family residence and the use of any community movables or immovables to the spouse in accordance with the best interest of the family. If applicable, the court shall consider the granting of the occupancy of the family residence and the use of community movables or immovables in awarding spousal support..
C. A spouse who, in accordance with the provisions of Subsection A or B of this Section, uses and occupies or is awarded by the court the use and occupancy of the family residence, a community immovable occupied as a residence, or a community manufactured home as defined in R.S. 9:1149.2 and occupied as a residence, regardless of whether it has been immobilized, shall not be liable to the other spouse for rental for the use and occupancy, except as hereafter provided. If the court awards use and occupancy to a spouse, it shall at that time determine whether to award rental for the use and occupancy and, if so, the amount of the rent. The parties may agree to defer the rental issue for decision in the partition proceedings. If the parties agreed at the time of the award of use and occupancy to defer the rental issue, the court may make an award of rental retroactive to the date of the award of use and occupancy.

. Prior to its amendment in 2009, La. R.S. 9:374(B) and (C) limited the liability of a spouse for rental for his use and occupancy of the family residence when the family residence is community property. As previously stated, the family residence in the instant case is not community property, but is owned by Troy and Tammy in indivisión. However, 2009 La. Acts 204, § 2 expanded La. R.S. 9:374(B) and (C) to apply to a family residence that is owned by the spouses in indivision. Because we find that Tammy failed to preserve the rental issue under the requirements of La. R.S. 9:374(C), which were the same before and after the 2009 amendment, we do not address the propriety of Tammy’s claim under La. R.S. 9:374, as such would require this court to determine the effect of the 2009 amendment, which is an issue not addressed by either party in the trial court or on appeal.

. Recapitulation:
Total Assets: $168,722.02
Total Debts: $383,201.90
Assets Allocated to Troy: $108,722.02
Assets Allocated to Tammy: $ 60,000.00
Debts Allocated to Troy: $365,970.86
Debts Allocated to Tammy: $ 17,231.04
Troy’s Reimbursement Claims: $139,985.99
Tammy’s Reimbursement Claims: $ 15,000.00
*1032 Formula for determining equalization payment:
Husband Wife
½ Assets $ 84,361.01 $ 84,361.01
½ Debts-Troy + $182,985.43 -$182,985.43
½ Debts-Tammy -$ 8,615.52 + $ 8,615.52
½ Reimbursement-Troy + $ 69,993.00 -$ 69,993.00
½ Reimbursement-Tammy -$ 7,500.00 + $ 7,500.00
Total $321,223.92 $152,501.90
Less Assets Allocated $108,722.02 $ 60,000.00
+ $212,501.90 -$212,501.90