McCLENDON, J.
In this appeal, the appellant challenges a trial court judgment partitioning former community property. The appellee has answered the appeal. For the reasons that follow, we amend the judgment in part and remand for further proceedings consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
Dorothy Matthews Hardy and Elijah John Hardy were married on September 19, 1981. During their marriage they resided in West Feliciana Parish until they separated in August of 2010. On February 8, 2011, Mrs. Hardy filed a Petition for Divorce, and on April 20, 2011, the trial court signed a judgment of divorce. Thereafter, on March 6, 2013, Mr. Hardy filed a Petition for Judicial Partition of Community Property pursuant to LSA-R.S. 9:2801. On December 5, 2013, Mrs. Hardy filed a Motion and Order to Show Cause for Domestic Relations Order, which was set for hearing on January 22, 2014. On January 22, 2014, pursuant to an agreement, the trial court signed a Domestic Relations Order, partitioning the retirement account of Mr. Hardy and awarding fifty percent of his Louisiana State Employees' Retirement System (LASERS) benefits to Mrs. Hardy.[1] Neither Mr. Hardy nor Mrs. Hardy were at the hearing.
*452 On September 23, 2016, a bench trial on the remaining community property issues, regarding certain immovable property, movable property, and reimbursement claims, was held. The trial court took the matter under advisement and, on October 28, 2016, issued Reasons for Judgment partitioning the remaining community assets of the parties. The trial court signed a judgment on February 15, 2017. Thereafter, Mrs. Hardy filed a motion for new trial, asserting that her reimbursement claims were improperly calculated. Following a hearing, the motion for new trial was denied, and on May 10, 2017, the trial court signed a judgment. Mr. Hardy has appealed the February 15, 2017 judgment, and Mrs. Hardy answered the appeal.
In his appeal, Mr. Hardy contends that the trial court erred in failing to amend the domestic relations order that incorrectly apportioned his retirement account. He further asserts that the incorrect distribution resulted in an inequitable division of the remaining community assets. Mr. Hardy also maintains that the trial court erred in failing to address Mrs. Hardy's LASERS retirement account in connection with the partition and in failing to allow testimony regarding Mrs. Hardy's LASERS retirement account.
Mrs. Hardy answered the appeal and alleges that the trial court incorrectly calculated her reimbursement claim for the mortgage payments she made on the community home. Specifically, she contends that the trial court was incorrect in finding the amount of reimbursement due to her to be one half of the principal amount of the payments, rather than one-half of the entire amount of the payments paid from her separate funds for the community debt. Mrs. Hardy also prayed for reasonable attorney fees in answering the appeal. Mrs. Hardy also filed a Motion and Order for Peremptory Exception of Prescription in this court.
DISCUSSION
The provisions of LSA-R.S. 9:2801 set forth the procedure by which community property is to be partitioned when the spouses are unable to agree. Benoit v. Benoit, 11-0376 (La.App. 1 Cir. 3/8/12), 91 So.3d 1015, 1018, writ denied, 12-1265 (La. 9/28/12), 98 So.3d 838. The statute requires that both parties file sworn detailed descriptive lists and that each party either traverse or concur in the inclusion or exclusion of each asset and liability and the valuation contained on the other party's list. LSA-R.S. 9:2801A(1) and (2). The statute further provides that, at the trial of the traverses, the trial court shall determine community assets and liabilities, and states that valuation of assets shall be determined at the trial on the merits. LSA-R.S. 9:2801A(2). Thereafter, the court shall partition the community in accordance with the rules set forth in the statute. LSA-R.S. 9:2801A(4).[2] See *453 Watts v. Watts, 15-1985 (La.App. 1 Cir. 10/31/16), 2016 WL 6426443 (unpublished).
It is well settled that a trial court has broad discretion in adjudicating issues raised by the partition of the community. The trial court is afforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses. Factual findings and credibility determinations made in the course of valuing and allocating assets and liabilities in the partition of community property may not be set aside absent manifest error. Benoit, 91 So.3d at 1019. However, the allocation or assigning of assets and liabilities in the partition of community property is reviewed under the abuse of discretion standard. Id.
In his first two related assignments of error, Mr. Hardy asserts that the trial court erred in the apportionment of his LASERS retirement account, which resulted in an inequitable distribution of the former community assets. However, we note that the domestic relations order was the result of an agreement presented by counsel and signed in open court.[3]
A consent or a stipulated judgment is a bilateral contract by which the parties adjust their differences by mutual consent, with each party balancing his hope of gain against his fear of loss. M.P.W. v. L.P.W., 13-0366 (La.App. 1 Cir. 11/1/13), 136 So.3d 37, 43 ; see also La. C.C. arts. 3071 and 3072. Its binding force arises from the voluntary acquiescence of the parties rather than the adjudication by the court. M.P.W., 136 So.3d at 44. Generally, there is no right to appeal a stipulated or consent judgment. See Mill Creek Homeowners Ass'n, Inc. v. Manuel, 04-1385 (La.App. 1 Cir. 6/10/05), 916 So.2d 268, 269. That is because "[a]n appeal cannot be taken by a party who confessed judgment in the proceedings in the trial court or who voluntarily and unconditionally acquiesced in a judgment rendered against him." LSA-C.C.P. art. 2085. A consent judgment is a final judgment as between the parties. Mill Creek Homeowners Ass'n, Inc., 916 So.2d at 269.
Nevertheless, Mr. Hardy argues that he did not know about the domestic relations order, was not aware it had been signed, and never consented to the January 22, 2014 judgment. However, the record establishes *454 that when Mrs. Hardy filed her motion and order to show cause why the proposed domestic relations order should not be signed, Mr. Hardy was personally served with the signed order, together with a copy of the proposed domestic relations order. Additionally, after the trial court signed the domestic relations order, Mr. Hardy was personally served with a certified copy of the signed order.
Mr. Hardy also asserts that he never authorized his attorney to consent to the judgment. It is undisputed in this matter that Mr. Hardy did not sign the January 22, 2014 judgment. However, it is also undisputed that Mr. Hardy was represented during these proceedings, including the date the judgment was submitted, by the attorney who signed the judgment on Mr. Hardy's behalf. Accordingly, we find that Mr. Hardy's attorney was clearly acting as his agent and representative in submitting the judgment and that Mr. Hardy fully acquiesced in the domestic relations order such that it constituted a valid compromise. See Sullivan v. Sullivan, 95-2122 (La. 4/8/96), 671 So.2d 315, 317-18 (When an agreement is reduced to writing, it must be signed by the parties or their agents); Dozier v. Rhodus, 08-1813 (La.App. 1 Cir. 5/5/09), 17 So.3d 402, 408, writ denied, 09-1647 (La. 10/30/09), 21 So.3d 294 ("If it were necessary for the party to sign the writing that serves as proof of the agreement, often there would be no basis for enforcement, because generally the attorneys rather than the parties negotiate and contract ... agreements"); Daffin v. McCool, 09-0785 (La.App. 1 Cir. 12/23/09), 30 So.3d 120, 122-23 (Defendant's attorney was acting as the defendant's agent and representative when the attorney entered into a compromise in a community property partition matter). Therefore, we find that Mr. Hardy's first two assignments of error lack merit.
In Mr. Hardy's last two assignments of error, he complains that the trial court erred in failing to consider Mrs. Hardy's LASERS retirement account in the partition of the remaining community assets. The record shows that prior to the trial to partition the community property, each party filed into the record several detailed descriptive lists. The most recent list filed by each party included, as a community asset, Mrs. Hardy's LASERS retirement account.
Admittedly, the trial court made no mention of any benefits paid to Mrs. Hardy in its February 15, 2017 judgment. Generally, silence in a judgment of the trial court as to any issue, claim, or demand placed before the court is deemed a rejection of the claim and the relief sought is presumed to be denied. Schoolhouse, Inc. v. Fanguy, 10-2238 (La.App. 1 Cir. 6/10/11), 69 So.3d 658, 664. Because Mr. Hardy argues that Mrs. Hardy's retirement benefits should have been included in the community as a community asset, we will consider the trial court's silence as to Mr. Hardy's argument as a rejection of that claim. Accordingly, we must decide whether the trial court was correct in finding that the benefits Mrs. Hardy receives from LASERS are her separate property, such that they were not subject to partition.
In Louisiana, a former spouse is entitled to a share of retirement benefits attributable to the former community to the extent the retirement benefits were attributable to the former community. Bordes v. Bordes, 98-1004 (La. 4/13/99), 730 So.2d 443, 445. However, the purpose of paying benefits under a retirement plan is different when the benefits are payable because the employee spouse becomes disabled rather than when the benefits are payable because the employee spouse reaches normal retirement age.
*455 Bordes, 730 So.2d at 447. In Bordes, the Louisiana Supreme Court noted that when the divorced employee spouse receives benefits because of disability, the benefits are paid in lieu of income that would otherwise be the employee spouse's separate property. Therefore, basing the classification of benefits upon the purpose of the payment of benefits was fair and equitable, and provides ease of administration. Upon the employee spouse becoming disabled, the disability benefits replace the working wages he or she can no longer earn. Bordes, 730 So.2d at 447-48. The supreme court recognized that in contrast to the employee spouse, the non-employee spouse can continue to earn (and keep) one hundred percent of the wages he or she was earning when the employee spouse became disabled. Thus, awarding a share of disability retirement benefits to the non-employee spouse who does not need to replace wages lost because of inability to work, while reducing the amount of benefits payable to the disabled spouse who has such a need, is contrary to the purpose of a disability feature in a retirement plan. Bordes, 730 So.2d at 448.
While the supreme court also recognized that the source of Mr. Bordes' disability retirement benefits was the same as his normal retirement benefits, that alone did not make the payments more representative of retirement income. Other factors that supported classifying the benefits as compensation for lost earnings included the fact that the payments were conditioned on Mr. Bordes' continuing disability, that he was required to undergo periodic medical examinations and submit annual income statements while receiving the benefits, and that the benefits automatically converted to a normal retirement benefit upon his reaching retirement age. The supreme court concluded that Mr. Bordes' disability retirement benefits were more akin to compensation for lost earnings due to serious injury or illness and were his separate property. Bordes, 730 So.2d at 448.
The supreme court then addressed the normal retirement benefits Mr. Bordes would receive when he turned sixty, confirming that a spouse's right to receive benefits payable by a retirement plan is an asset of the community. The supreme court stated that, at the time of partition, a non-employee spouse is entitled to a declaration of the interest attributable to the community in retirement benefits, if and when they become due and that when they do become due, the non-employee spouse is entitled to receive the proportion of them recognized as attributable to the other spouse's employment during the existence of the community. Bordes, 730 So.2d at 448 ; Sims v. Sims, 358 So.2d 919, 923-24 (1978). See also Morgan v. Morgan, 16-0964 (La.App. 1 Cir. 2/17/17), 212 So.3d 1235, 1241-42, writ denied, 17-0454 (La. 5/1/17), 219 So.3d 331 ; Anzalone v. Anzalone, 07-1905 (La.App. 1 Cir. 11/18/08), 25 So.3d 836, 838-41, writ granted and judgment reversed in part on other grounds, 08-2988 (La. 4/13/09), 6 So.3d 755. In Sims, the Louisiana Supreme Court set forth the formula to determine a non-employee spouse's interest in the employee spouse's retirement benefit plan at the time the community property regime is terminated. Sims, 358 So.2d at 924. Because Mr. Bordes' disability retirement benefit would automatically convert to a normal retirement benefit upon reaching the retirement age of sixty, Mrs. Bordes was entitled to receive a proportion of Mr. Bordes' retirement benefits attributable to his employment during the community. Bordes, 730 So.2d at 448.
At the trial in this matter, Mrs. Hardy testified that she receives from LASERS disability retirement benefits and that she reports annually to the retirement board.
*456 Mr. Hardy acknowledged in his testimony that the benefits were for Mrs. Hardy's disability.[4] Considering that the only evidence presented was that Mrs. Hardy's benefits were for her disability and to the extent the trial court treated Mrs. Hardy's benefits as a separate asset not subject to partition, we find no error.
However, our inquiry does not end there. It must be determined whether at any point Mrs. Hardy's disability retirement benefits will convert or have converted to a regular retirement benefit. As in Bordes , Mr. Hardy may also be entitled to receive a proportion of Mrs. Hardy's retirement benefits attributable to her employment during the community if at any point her disability payment converts to a retirement benefit. We find that the trial court erred in failing to address this issue. As an appellate court, we are empowered to render judgment if there is a sufficient record upon which to do so. See Pierce v. McCoy, 16-0243 (La.App. 1 Cir. 10/31/16), 207 So.3d 1069, 1077. However, the record before us is incomplete to render a just decision. Therefore, given the inadequacy of the record, we remand the matter to the trial court for the sole purpose of determining whether Mrs. Hardy's LASERS disability retirement benefits convert to normal retirement benefits after certain age or service requirements are met, and, if so, for a calculation of Mr. Hardy's proportionate share according to Sims consistent with this opinion.
In her answer to the appeal, Mrs. Hardy contends that the trial court committed error in failing to properly calculate her reimbursement claim in accordance with LSA-C.C. art. 2365. She maintains that the trial court erred in calculating the reimbursement owed to her for the mortgage payments she made from her separate property on three community property obligations. Particularly, Mrs. Hardy contends that the trial court only reimbursed her one-half of the amount of the payments she made for the principal of the loan rather than one-half of the entire amount of the payments made, including interest. We find that Mrs. Hardy's answer to the appeal has merit.
Article 2365 provides, in pertinent part:
If separate property of a spouse has been used either during the existence of the community property regime or thereafter to satisfy a community obligation, that spouse is entitled to reimbursement for one-half of the amount or value that the property had at the time it was used.
Therefore, a paying party is entitled to reimbursement for post-termination, pre-partition use of separate funds for the payment of a community debt. See LSA-C.C. art. 2365, Revision Comments (2009).
*457 However, the burden of proof is on the party claiming reimbursement. McElwee v. McElwee, 93-1010 (La.App. 1 Cir. 8/17/94), 649 So.2d 975, 978.
In this case, it is undisputed that, after the termination of the community, Mrs. Hardy paid off the remaining balances on the three loans at issue at the Bank of St. Francisville and Feliciana Bank. We will address each loan separately.
The Wakefield Property Loan
Mrs. Hardy resides in the former community home, known as the Wakefield property.[5] On February 8, 2011, the date of the termination of the community, the mortgage balance on the home was $ 75,536.86. Mrs. Hardy asserts that she paid a total of $ 87,986.97 to the Bank of St. Francisville with her separate funds after February 8, 2011. This amount was to pay off the mortgage on the former community home. Our review of the record shows that Mrs. Hardy presented evidence that she paid $ 82,989.61 on the loan balance.[6] The mortgage payments on the former community home were clearly a community debt, and Mrs. Hardy is entitled to reimbursement for one-half, or $ 41,494.81, of the separate property that was used to satisfy this community obligation. See LSA-C.C. art. 2365.
Mrs. Hardy also asked to be reimbursed for the property taxes and insurance payments she made on the Wakefield property after the termination of the community. We find that Mrs. Hardy has sufficiently shown that she paid $ 3,829.38 in taxes and insurance from her separate property for the former community home after the community terminated and should be reimbursed for one-half of that amount, or $ 1,914.69.
The Clinton Property Loan
Mrs. Hardy also asserts that she used her separate funds after the termination of the community to pay Feliciana Bank the indebtedness on the immovable property located in Clinton, Louisiana. The property was the former home of Mrs. Hardy's mother. However, it was purchased by the parties in 2006.[7]
At the termination of the community, the loan balance on the Clinton property was $ 31,107.76. Mrs. Hardy asserts that she is entitled to reimbursement for payments totaling $ 43,028.15 that she made to pay off the balance, including interest, owed to Feliciana Bank. We find that Mrs. Hardy sufficiently established that she paid said $ 43,028.15 with her separate funds, and, therefore, she is entitled to reimbursement of one-half of that amount, or $ 21,514.08.[8]
The Automobile Loan
Mrs. Hardy also claims reimbursement for the payments she made to the Bank of St. Francisville on the Honda CRV purchased in 2007. The automobile *458 was originally purchased for use by Mrs. Hardy, but sometime thereafter was given to the Hardy's daughter for her use. Mrs. Hardy testified that in 2008 she and Mr. Hardy gave their daughter the use of the car and that they agreed to continue to make the car payments. Although Mr. Hardy testified that his daughter began using the vehicle only after the termination of the community, the trial court clearly found Mrs. Hardy's testimony that the daughter took over the use of the car in 2008 more credible. We can find no manifest error in this determination.[9]
At the termination of the community, the loan balance on the vehicle was $ 9,498.70. Mrs. Hardy presented evidence that she paid $ 9,860.58 from her separate funds to pay off the loan. Therefore, she is entitled to reimbursement for one-half of that amount, or $ 4,930.29.
In summary, Mrs. Hardy provided sufficient evidence to show that she paid a total of $ 139,707.72 from her separate funds to pay community obligations. Therefore, Mrs. Hardy is entitled to reimbursement in the amount of $ 69,853.86 from Mr. Hardy. The value of the community assets total $ 183,101.00, and each party is entitled to a value of $ 91,550.50. Therefore, Mrs. Hardy is entitled to a net value of $ 161,404.36 after reimbursement, i.e., $ 69,853.86 + $ 91,550.50. Mr. Hardy is entitled to a net value of $ 21,696.64 after reimbursement, i.e., $ 91,550.50 - $ 69,853.86. Mrs. Hardy received property valued at $ 153,251.00, which is $ 8,153.36 less than her entitlement. Mr. Hardy received property valued at $ 29,850.00, which is $ 8,153.36 more than his entitlement. Accordingly, we amend the judgment to order Mr. Hardy to pay an equalizing reimbursement claim in the amount of $ 8,153.36.
Next, considering our previous discussion regarding Mr. Hardy's assignments of error, we also dismiss as moot Mrs. Hardy's Motion and Order for Peremptory Exception of Prescription. After this appeal was filed, Mrs. Hardy filed a Motion and Order for Peremptory Exception of Prescription in which she asserted that, rather than appealing the February 15, 2017 judgment in this matter, Mr. Hardy was actually seeking to overturn the January 22, 2014 judgment partitioning Mr. Hardy's retirement. We have already concluded that Mr. Hardy cannot appeal the January 22, 2014 judgment.
Finally, although Mrs. Hardy's answer to the appeal requested attorney fees for work performed in handling the appeal based on a frivolous appeal, she did not brief this issue, either in her answer to the appeal or in her appellate brief. Mrs. Hardy's answer to the appeal asks for "all reasonable attorney's fees incurred by the appellee in answering this appeal." Likewise, her appellate brief does not address the request, but in the conclusion merely requests that she "be granted all reasonable attorney's fees and court costs incurred as a result of this frivolous appeal filed on behalf of [Mr.] Hardy in this matter." This issue is considered abandoned because Mrs. Hardy did not brief her contention with argument or citation *459 of authority to support her assertion of a frivolous appeal. See Uniform Rules of Louisiana Courts of Appeal, Rule 2-12.4B(4); Deubler v. Bogalusa City Schools, 18-0312 (La.App. 1 Cir. 9/21/18), 262 So.3d 393.
Furthermore, even were we to address Mrs. Hardy's answer to the appeal, we find that damages for a frivolous appeal are not warranted. Damages for a frivolous appeal are awarded pursuant to LSA-C.C.P. art. 2164, which provides that an appellate court may award damages for frivolous appeal when there is no serious legal question, when the appeal is taken solely for the purpose of delay, or when it is evident that the appellant's counsel does not seriously believe in the position he advocates. Courts have been very reluctant to grant damages under this article, as it is penal in nature and must be strictly construed. Lane Memorial Hosp. v. Gay, 03-0701 (La.App. 1 Cir. 2/23/04), 873 So.2d 682, 687. Moreover, appeals are favored and penalties for frivolous appeal will not be imposed unless they are clearly due. Even when an appeal lacks serious legal merit, damages for a frivolous appeal will not be awarded unless it is clear that the appeal was taken solely for the purpose of delay or that appellant is not serious in the position he advocates. The slightest justification for an appeal precludes damages for frivolous appeal. Dukes v. Sherwood Acres Apartments, 04-0405 (La.App. 1 Cir. 12/30/04), 898 So.2d 416, 418. Although we have determined that his appeal lacks merit, after reviewing the record, including the trial transcript, we cannot say that Mr. Hardy did not seriously believe the position he advocated.
CONCLUSION
For the foregoing reasons, we dismiss Mrs. Hardy's peremptory exception raising the exception of prescription as moot. We also amend the February 15, 2017 judgment to order Mr. Hardy to pay an equalizing reimbursement claim in the amount of $ 8,153.36. Additionally, we remand the matter to the trial court to determine whether Mrs. Hardy's LASERS disability retirement benefits will convert to normal retirement benefits and, if so, for a calculation of Mr. Hardy's proportionate share, consistent with the views expressed in this opinion. Costs of this appeal are assessed to Elijah John Hardy.
EXCEPTION OF PRESCRIPTION DISMISSED AS MOOT; JUDGMENT AMENDED, IN PART, AND REMANDED.
Whipple, C.J. concurs in the result.
Higginbotham, J. concurs in the result.

A January 22, 2014 minute entry shows the following:
Counsel for the parties informed the court that an agreement had been reached and presented the court with a domestic relations order, which was signed in open court.
Mr. Hardy never attempted to appeal the domestic relations order.

Louisiana Revised Statutes 9:2801A(4) provides, in pertinent part:
A. When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising either from the matrimonial regime, or from the co-ownership of former community property following termination of the matrimonial regime, either spouse, as an incident of the action that would result in a termination of the matrimonial regime or upon termination of the matrimonial regime or thereafter, may institute a proceeding, which shall be conducted in accordance with the following rules:
* * *
(4) The court shall then partition the community in accordance with the following rules:
(a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.
(b) The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.
(c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.
(d) In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security.

The order contains the signature of Mr. Hardy's counsel with the notation, "Stipulated as to form and approved 1-22-14."

The record is unclear as to the nature of Mrs. Hardy's disability. While Mr. Hardy asserts that the trial court erred in not allowing him to question Mrs. Hardy at trial regarding her disability retirement benefits, on our review, we find that Mr. Hardy was trying to establish that Mrs. Hardy was not actually disabled. During the cross-examination of Mrs. Hardy, counsel for Mr. Hardy tried to question Mrs. Hardy on the nature of her disability. When counsel for Mr. Hardy questioned whether Mrs. Hardy was receiving the disability benefits lawfully, the trial court stated that that argument would have to be the subject of a separate claim and not part of an action to partition community property. Also, when asked by counsel for Mr. Hardy whether she had any proof that she notified LASERS that she was receiving disability retirement benefits while working full-time, Mrs. Hardy's attorney objected as to relevance, and the objection was sustained. Regardless, any argument that Mrs. Hardy was not disabled would not and does not change the character of the payments made to Mrs. Hardy.

We note that Mr. Hardy did not timely seek rental reimbursement from Mrs. Hardy for the use of the former community home.

The record indicates that two payments that Mrs. Hardy claimed were part of the payments to the Bank of St. Francisville on the mortgage for the former community home were actually payments to the Bank of St. Francisville on the mortgage for the Honda CRV. Also, two payments referenced a different loan and another payment was shown twice.

Mrs. Hardy's mother continued to reside in the Clinton property without paying rent until 2016.

Two payments were made by Mrs. Hardy to East Feliciana Bank with a different loan number. Mrs. Hardy failed to sufficiently prove that this loan number was associated with a mortgage on the Clinton property.

We note the second paragraph of LSA-C.C. art. 2365, which reduces the reimbursement claim of the spouse with the enjoyment of certain corporeal movables and provides:
If the community obligation was incurred to acquire ownership or use of a community corporeal movable required by law to be registered, and separate property of a spouse has been used after termination to satisfy that obligation, the reimbursement claim shall be reduced in proportion to the value of the claimant's use after termination of the community property regime. The value of that use and the amount of the claim for reimbursement accrued during the use are presumed to be equal.